Catherine Murtha, Defendant in Error, v. John J. O'Heron, Plaintiff in Error.

Gen. No. 17,280.

1. ADJOINING LANDOWNERS—*water.* One adjoining owner is liable to another for damage caused by waste water flowing from his barn upon the premises of the other.

2. EASEMENTS—*when not created by contract.* A contract for the sale of land providing that the purchaser shall have the right to connect with sewer pipes through an adjacent lot does not create an easement where it does not appear that vendor is the owner of the adjacent lot.

3. DEEDS—*construction.* A provision in a deed that it is given "in fulfillment" of a contract means in satisfaction of the contract and that the deed expresses the final and entire contract between the parties.

4. EASEMENTS—*where deed is "in fulfillment" of contract.* Where a contract for the sale of a lot provides that the purchaser shall have the right to use sewer pipes across an adjacent lot, a deed which provides that it is given "in fulfillment" of the contract does not include or grant an easement for such user.

5. EASEMENTS—*where user is invisible.* No prescriptive title arises from the use of an invisible and unknown drain.

6. EASEMENTS—*duties of dominant owner.* Where defendant has an easement to maintain a sewer pipe across plaintiff's lot, it is his duty at his own risk, regardless of negligence or knowledge of any defect, to keep it in repair, and to keep sewage from passing otherwise than along the accustomed channel.

7. DAMAGES—*when reasonable.* A judgment for $100 for damage to plaintiff's premises by flowage is not unreasonable where there is evidence that $39.14 was expended in determining the cause of flooding, that two months rent at $12 a month was lost and that undermining of plaintiff's house made it drop several inches.

Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed March 24, 1913.

O'DONNELL & O'DONNELL, for plaintiff in error.

BENJAMIN F. J. O'DELL, for defendant in error; FRANCIS STANLEY RICKCORDS, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

This writ of error is brought to reverse a judgment of the Municipal Court of the date of December 17, 1910, for $100 and costs, rendered in favor of Catherine Murtha, plaintiff below, and defendant in error here, against John J. O'Heron, defendant below and plaintiff in error here.

The suit in which the judgment was obtained was based on the following facts: The defendant, O'Heron, is the owner of Lot 18 in Cochran's Subdivision of Block 15 in the Canal Trustee's Subdivision of the S. E. ¼ of Section 17, T. 39 North, Range 14 East of the Third Principal Meridian in Chicago. This lot fronts west on Norton street and is 24 feet wide and 106.5 feet deep. Its rear is adjacent to and coterminous with the rear of Lot 15 in the same subdivision, which is of the same width and 100 feet long and which fronts east on South May street, which runs north and south parallel to Norton street. Catherine Murtha, the plaintiff, is the owner of said lot.

On lot 18 fronting west on Norton street is a barn in which the defendant has, or had at the time of the matters involved in this case, twenty or more horses.

A sewer from the barn carries off the urine from the barn and other sewage to a sewer on Norton street, but the water which overflows from the horses drinking trough in the barn flows through another sewer which runs from the barn through the rear end of the lot and connects with a catch basin in Lot 15 and through that with a sewer in May street.

Lot 15, when this case was begun and tried, was improved by a frame cottage built on wooden posts.

O'Heron became the owner of Lot 18, together with Lots 17 and 19 (lying respectively south and north of Lot 18) on July 13, 1908, by warranty deed from one Lynch, who apparently secured his undivided title through some release from or partition with one Dexter, who with Lynch was the grantee in a warranty

deed of Lots 18 and 19 by Valentine Partenheimer and wife to Dexter and Lynch jointly, March 24, 1886. This deed includes no express statement of any easement over Lot 15, but contains this clause:

"This deed is given in fulfillment of an agreement of sale recorded in the Recorder's Office of Cook County in Book 1776, page 94."

The agreement of sale thus identified was between Partenheimer and wife on the one hand and Dexter and Lynch on the other, for the conveyance of said Lots 18 and 19. It is dated March 9, 1886, and contains the following addendum to the description of those lots:

"Hereby giving said party of the second part the right to connect with the sewer and water pipes through Lot 15 of same subdivision."

The only evidence concerning the devolution of the title of Lot 15 to Catherine Murtha, who testified that she was the owner of it at the time of the suit and of the injury complained of in it, was that of O'Heron, who is reported by the statement of facts as saying that

"At the time the said Valentine Partenheimer and Eliza, his wife, entered into the said agreement with said Lynch and Dexter for the purchase of Lots 18 and 19 or within a few months afterwards, they were also the owners of said Lot 15 now owned by the plaintiff, Catherine Murtha."

O'Heron also testified that he was informed by Lynch and by the attorney who examined the title to Lots 17, 18 and 19, when he purchased them, that he had an easement over Lot 15, for the purpose of running the sewer and water pipes which led from his barn to the main sewer in South May street, and that the sewer and water pipes were laid in Lot 15 and were in use then and for some time previous, and that before he purchased said Lots 17, 18 and 19, he entered upon Lot 15 and saw the catch basin upon the said lot to which the sewer pipe ran from his barn, there being no leak at that time, he says, that he could see.

December 21, 1909, O'Heron found the water supply pipes in his barn were frozen and discovered that the basement or cellar under the barn was filled with water and ice. Investigating further through plumbers and sewer builders he discovered that the sewer pipe running from his barn had been cut off on Lot 15 by the plaintiff and the end bricked up. O'Heron testified that thereupon he directed his plumber and sewer builder to open the said sewer and again connect it with the catch basin in the yard of the plaintiff, which connected with the sewer on May street. Apparently this new or renewed connection was made, for the "Statement of Facts" represents that the defendant as testifying that he employed competent plumbers and sewer builders to do this sewer and plumbing work and to make the necessary connections; but it does not appear from the record whether the unobstructed connection now exists or not. In January, 1910, Mrs. Murtha wrote O'Heron at least two letters complaining of the presence of the sewer and water pipes from Lot 18 in her lot, the last one ordering him to remove them. Whether this was done or not does not appear. The defendant testified "that at no time prior to the bringing of this suit did the plaintiff claim any damages because the sewer pipes leaked or that she paid out any money to carpenters for raising the house, or that she lost any money because her cottage was not rented, but that she told him that she hired a plumber to stop up the pipes in her lot because she thought that he had no right to have his pipes in her lot."

However on March 17, 1910, she began suit against O'Heron in the Municipal Court, declaring in her Statement of Claim that her claim was for damages sustained, money expended for plumbing and use of yard, sewer pipes and catch basin.

Ordered to file a more specific statement the plaintiff filed the affidavit of her attorney that:

"the nature of plaintiff's demands is for money expended by her for plumbing services in the repair and

construction of certain broken, defective and leaking sewer and pipes leading to the catch basin on her premises at No. 341 South May street, Chicago, during the spring, summer and fall of 1909, from the barn of the defendant of the adjoining property, and for the use of plaintiff's yard and pipes by the defendant extending from her catch basin and through her yard to the defendant's barn, and further for damages sustained by said plaintiff as a result of water leaking in her basement from said broken pipes, for the vacancy of her premises caused by said leak, and the consequent loss of rent and damage to said property, its foundation, walls, etc., and for the opening up and resultant damaging condition of plaintiff's yard;'' all, as the statement says, amounting to $150.

Ordered again to file a more specific Statement of Claim, the plaintiff thus tabulated it in a document filed May 10, 1910:

"Money expended by plaintiff for plumbing services, etc., as alleged in affidavit of claim,                                                    $   39.14

Loss of rent for plaintiff's premises as alleged in said affidavit of claim for the months of towit:   November and December, 1908, and January, February, March, April, May, June, July and August, 1909,                         72.00

(Note:   The dates seem to be plainly clerical errors for 1909 and 1910 respectively.)

Incidental expenses incurred, inconvenience caused and unliquidated damages sustained and claimed,                                           38.86
                                                   ─────────
                                                   $150.00''

When the case came on for trial the plaintiff Murtha testified that in November, 1909, she ascertained that the yard and basement or first floor of the cottage on her Lot 15 were flooded with water and sewage, which caused the earth to give way in the rear of her house, washed away the dirt from the rear of the basement around the wooden posts, and made the rear of the house drop several inches. Thereupon she employed

a plumber, one McNamara, who testified at the trial. On his digging up the ground and investigating he ascertained that the sewer pipe running from the barn on Lot 18 was broken and leaking. He cut off the pipe and stopped it up. There was nothing in the testimony of the plaintiff about the restoration of the pipe and flow of water in December or January by the defendant, as sworn to by the latter.

It seems quite clear to us, from the statements of claim by the plaintiff and by the report of her testimony and that of the witnesses produced by her, that the damage for which the plaintiff sued was that which, as she alleged, was done to her and her property by the leak or break in November before she had the pipe stopped up.

The attitude of the defendant, however, below and in this court, makes it doubtful whether he did not consider himself as defending chiefly at least against a claim for damages resulting from his removing in December or January the obstructions to the flow of water which had caused the flooding of his barn.

We do not deem it very material, however. In either case the water and sewage which did the damage flowed through Lot 15 from Lot 18 with the knowledge and consent of the defendant, as shown by his own testimony and under a claim by him that he had an easement for such a sewer or drain pipe.

That he had such an easement is denied by the plaintiff.

Whether he did or not, we think that he was liable for any damage done by a break or leak in the sewer pipe.

If he did not have an easement, he was liable on primary principles for, without right, so disposing of the waste water and sewage from his barn as to injure his neighbor.

We do not think on the record in this case it can be said that the defendant, on whom the burden rested, established his right to the easement which he claimed.

In the first place, although the claim of the easement depends entirely on the provision heretofore quoted from the contract between Partenheimer and Lynch & Dexter, Partenheimer is not proven by the evidence to have had any title to Lot 15 when he made that contract. The testimony of O'Heron, previously given, was only that then *or within a few months afterwards,* Partenheimer and his wife were owners of Lot 15, and this is all that appears on this subject. This is manifestly a very inconclusive method of proving a common source of title at the time the easement was created. Whether an estoppel could be worked against the subsequent purchaser of a subsequent owner because, without right, that owner had once attempted to create an easement over the land thus subsequently owned by him, is a question we need not discuss, for there are other reasons for holding the easement unproven. The stipulation for it was contained in the contract of March 9, 1886. It does not appear nor does any reference to it appear in the warranty deed of March 24, 1886. The defendant contends that as this deed is declared on its face to be given in *fulfillment* of the said contract, the stipulation must be read into it. But the plaintiff, with as much reason and more authority, maintains that *"in fulfillment"* of the contract means *in satisfaction* of the contract, and that the deed expressed the final and entire contract between the parties, and as it did not include the easement, the easement was never granted. This would certainly seem to be the effect of the reasoning in the utterances of the courts cited by the claintiff. Williams v. Hathaway, 19 Pick. (Mass.) 387; Slocum v. Bracy, 55 Minn. 249; Clifton v. Jackson Iron Co., 74 Mich. 183; Carter v. Beck, 40 Ala. 599; Close v. Burlington, C. R. & N. R. Co., 64 Iowa, 149.

The defendant (plaintiff in error) says in his Brief and Argument in this court that there was a "user by himself and his grantor of the right for over twenty-five years," and there would seem to have been such

a user for over twenty years, although there is no proof of it for twenty-five.

But the drain was underground and there is no proof that the user was adverse or visible, open or notorious to the plaintiff or her immediate predecessors in title. The authorities declare that in such a case, of an invisible and unknown drain, no prescriptive title arises. Treadwell v. Inslee, 120 N. Y. 458; Munson v. Reid, 46 Hun, 399; Zirngibl v. Calumet & C. Canal & Dock Co., 157 Ill. 430.

But if we are wrong in holding that the easement was not proved in this case, it does not follow that the defendant is not liable for the damage which resulted to the plaintiff.

The authorities show that in the case of a dominant and servient estate in the matter of a drain and of sewage, it is the duty of the owner of the dominant estate and easement at his own risk and without regard to his actual negligence or to his knowledge of any defect in the sewer or drain, to keep it in repair, and as Lord Denman said in one of the cases below cited, to keep the sewage from passing from his own premises to the plaintiff's premises otherwise than along the accustomed channel. Humphries v. Cousins, L. R. 2 C. P. Div. 239; Richardson v. Kier, 34 Cal. 63; Joseph v. Ager, 108 Cal. 517.

To the same effect are the standard text books— Jones on Easements, sec. 821; Washburn on Easements (4th ed.) p. 733; 10 American & Eng. Ency. of Law, "Drains and Sewers," p. 236.

We do not think the liability of defendant can be open to serious question.

The defendant, however, also maintains that there is no sufficient proof that the damages suffered by the plaintiff amounted to the sum—one hundred dollars—assessed by the court.

But there was evidence that $39.14 was expended by the plaintiff in ascertaining the cause of the flooding; that her cottage, which was rented for $12 a month,

was vacant two months on account of it, and that the undermining of the house and the posts on which it stood made it drop several inches. We do not think the allowance, under the evidence, unreasonable, nor that there was substantial error shown in the rulings or findings of the court.

The judgment of the Municipal Court is affirmed.

*Affirmed.*