(No. 13677.—Reversed in part and remanded.)

WILLIAM A. SELL *et al.* Appellees, *vs.* HENRY FINKE *et al.* Appellants.

*Opinion filed December 21, 1920.*

1. EASEMENTS—*special grant does not change character of right of way previously established by use.* Where the owner of a tract of land and his grantee have enjoyed the use of an enclosed strip of adjoining land as an outlet road for many years, the fact that the grantee some years after his purchase and as a matter of precaution procured an unsealed written instrument from the owner of the adjoining land granting "a perpetual right of road sufficient width for a wagon track," does not change the character of the previous right into a permissive use nor restrict the right to a narrower strip than was previously enjoyed. (*Schmidt* v. *Brown,* 226 Ill. 590, applied.)

2. SAME—*the right of way by prescription includes right to do whatever is reasonably necessary to make it enjoyable.* Title by prescription presumes a grant, and in case of a roadway over land of others it carries the right to do whatever is reasonably necessary for the reasonable use of it, including the right to restore the grade to its original level where water and travel have reduced it, provided this can be done within the limits of the road and without entering upon the adjoining land.

3. SAME—*right by prescription is limited to the use by which it is acquired.* The use which establishes the right to an easement by prescription limits and qualifies it so that it cannot be devoted to different uses and purposes.

4. SAME—*relative rights of owner of easement and owner of the land.* The owner of an easement must be allowed to do such things in the way of repairs as to make the easement reasonably usable, having due regard to the rights of the owner of the land; and the owner of the land has the right of full dominion and use of his land, except so far as reasonably necessary to the enjoyment of the easement.

5. SAME—*what acts of repair are necessary to enjoyment of easement depends upon circumstances in each case.* What acts of repair are reasonable to the use and enjoyment of an easement are questions of fact to be determined in each particular case and depend upon the extent of the lawful use of the easement.

APPEAL from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

WELLS & TALCOTT, and ROBERT H. EBERLE, guardian *ad litem,* for appellants.

H. C. RUMERY, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellees filed their bill in the circuit court of Cook county to enjoin an alleged trespass and for other relief. Appellees own the east half of the northwest quarter of section 36, in Maine township, Cook county, and appellants own the east half of the southwest quarter of section 25, same township, which lies immediately north of and joins appellees' land. Appellants' land is not reached by any public road, but access to and from it has been had continuously since about 1855 over appellees' land from a public road 1170 feet south of appellants' land, the traveled way being from the public road along the east side of appellees' land to appellants' land. After the original bill was filed the complainant and owner of appellees' land, Charles Sell, died, also the defendant, Heinrich J. Finke, the owner of appellants' land when the bill was filed, died, and the pleadings were amended making proper parties complainants and defendants. The original bill alleged Heinrich J. Finke had, without objection from complainant, been in the habit of crossing complainant's land along its eastern boundary from the so-called Higgins road, which runs in a northwesterly direction across complainant's land; that about June, 1917, defendant and his servants had wrong-

fully exercised acts of ownership over the land comprising the strip or way over complainant's land and had plowed a ditch along the side of said strip adjacent to the farming land of complainant, graded the earth so plowed upon the strip, forming a well-nigh impassable ditch between the strip and complainant's land, and had raised the level of the strip above the level of the land; that in doing said acts defendant had entered on complainant's land and injured the soil and crops growing thereon, and that complainant, because of said acts, was unable to properly cultivate his land along said strip or cross from it to his land with vehicles and farming implements. The bill further alleged that defendant threatened and was about to haul quantities of crushed stone and place it on said strip of land, thereby raising its level above the level of the land; that all of said acts were unnecessary to the proper use of the way by defendant; that he ought to restore the way or strip to the condition it was in before doing said acts and make reasonable compensation for the damages. The bill alleged the defendant was without means and wholly unable to pay any judgment complainant might recover against him. The bill prayed an injunction and that defendant be compelled to restore the land to its former condition. The answer admitted grading the strip used as a road and the intention to place crushed stone thereon, and alleged defendant had an easement of way over the strip for the purpose of access to and egress from his farm and home adjoining complainant's land on the north; denied that the ditch made in the grading was well-nigh impassable or interfered with the full, free and lawful use and enjoyment of complainant's land; alleged the ditch was only of the depth of one plow furrow, and the earth turned over from it was used for grading the right of way, and the ditch was necessary for its convenient use.

The defendant also filed a cross-bill, alleging a right of way over complainant's land acquired by prescription, and

prayed a decree establishing that right, and that defendants to the cross-bill be enjoined from interfering with the use of the right of way and from interfering with the reasonable improvement of it for such use.

Heinrich J. Finke left surviving him six minor children, who succeeded to his title by inheritance, and they by next friend, and the widow, their mother, were complainants in the cross-bill. A guardian *ad litem* was appointed for the minors as defendants to the original bill and complainants in the cross-bill.

After the issues were made up the cause was referred to a master in chancery, who reported the evidence and his conclusions, and after hearing exceptions to his report the chancellor entered the decree appealed from. The decree found a right of way by prescription 16½ feet wide was proven, but the owner of it had no right to grade or ditch said way or place crushed stone thereon, and appellants were enjoined from repairing the road except by the use of a drag for the purpose of leveling it when reasonably necessary. Appellants were ordered to fill up the ditches made by their father and place the roadway as nearly as possible in the same condition it was in before the ditches were plowed, using for that purpose the soil of said roadway. Appellants were decreed to pay one-half the taxable costs, less the amount already paid by Heinrich J. Finke.

The errors assigned by appellants challenge the correctness of the decree in denying them the right to make the repairs contemplated, as shown by the record, and enjoining them from making repairs, and the mandatory injunction to restore the roadway and premises to their condition prior to the grading. Appellees have assigned cross-errors questioning the correctness of the decree in holding appellants have a right of way over appellees' land, and also contend that if there was a right of way the decree is erroneous in holding it is 16½ feet wide instead of holding it is 10 feet wide.

Prior to 1850 the government patented to John Harrison the eighty acres now owned by appellants, and to his brother, Thomas Harrison, the eighty acres owned by appellees. They were unmarried and lived together on Thomas Harrison's eighty. Both are now dead. Marshall owned the land adjoining Thomas Harrison's land on the east. There was no public road leading to or by the John Harrison eighty, and it was reached by a driveway from the Higgins road, on Thomas Harrison's land, along the east side and immediately west of the Marshall line. A hedge fence was placed on the line between Marshall and Thomas Harrison, and about two rods west of that line a rail fence from the Higgins road to John Harrison's land was built on Thomas Harrison's eighty and the driveway was between these two fences. As we understand the testimony, the rail fence was built at least as far back as 1860 and the hedge fence prior to that date. A strip of appellees' land between these fences has been used continuously as a roadway to and from appellants' land. John Harrison sold his eighty in 1862 to Christian Jarnecke. The conveyance was by warranty deed and contained this clause: "Also it is further agreed that the said John Harrison give unto the said Christian Jarnecke a right of road from the Chicago road along Marshall's fence to the above property." The deed was filed for record and recorded in 1868. On March 26, 1869, Thomas Harrison made to Jarnecke an agreement in writing not under seal, granting to Jarnecke and his successors "a perpetual right of road sufficient width for a wagon track" from the John Harrison farm along Marshall's fence to the Chicago road. In 1870 Jarnecke and wife conveyed the land by warranty deed to Lambert Heinrich Finke, the deed containing this clause: "Also convey all right, title and interest which I may have in and to a certain right of way of John Harrison by warranty deed, * * * also by agreement of Thomas Harrison dated March 26, 1869." Lambert Heinrich Finke in No-

vember, 1911, conveyed the land to Heinrich J. Finke, now deceased, appellants' father. The deed also conveyed the right of way for a road from the farm to the Higgins road. Thomas Harrison conveyed his eighty to Henry Goede in 1872. Goede died and the land was sold at administrator's sale to Carl Sell in 1894. Sell died testate in 1897, and by his will the complainants in the original bill (appellees here) became the owners of the land. Both tracts of land have been used as farm land since they were patented to the Harrisons, and there is no other way of ingress to or egress from appellants' land except over the strip of land in question.

The master found there had been "user of a way as a roadway over the strip in question by the owners of the Finke farm since the year 1855 or 1858," and appellants were entitled to a roadway 10 feet wide. The chancellor sustained exceptions to the master's report as to the width of the road and decreed appellants have an easement of right of way over the east 16½ feet of appellees' land from the Higgins road north to the appellants' land for passage for themselves and others visiting them, on foot, with farm and other vehicles, and for the passage of horses, cattle and other farm stock; that the use of said way had been open, notorious and hostile under claim of right, and that Heinrich J. Finke had prior to June, 1917, the date the alleged acts of repair were committed, acquired by prescription the right of way over said 16½ feet and the right to draw over the same a drag for the purpose of leveling the roadway when reasonably necessary to the use of such right of way, and appellants had succeeded to their father's rights.

Appellees' contention that no right of way was obtained by prescription is based largely on the agreement of Thomas Harrison in March, 1869. Counsel had, previous to that instrument being disclosed, during the taking of testimony several months after the suit was commenced, and also by their bill, admitted appellants and their predecessors had

been in possession and use of the right of way for a sufficient length of time to give them a prescriptive right to sufficient land for a driveway, but when the paper signed by Thomas Harrison in March, 1869, came to their notice they withdrew their previous admission and insisted that instrument established that the use of the roadway was permissive and not adverse and no right by prescription could grow out of it. It is argued that John Harrison must have used the road by his brother's permission; that the circumstances do not show that while they lived together there was anything in their conduct or in the use made of the road to indicate John's use was hostile, under a claim of right, or that it was not merely permissive. It is argued the paper of 1869 shows that the use of the roadway had previously been permissive, and that instrument not being under seal was a mere license, and that since 1869 no prescriptive right to the use of the roadway has been acquired. The evidence warrants the conclusion that the roadway had been in continuous use by the owners of appellants' land since 1855, and the only basis for a claim that such use was under temporary license or permit is the paper referred to, made in 1869. John Harrison sold his land to Jarnecke in 1862, and he continued to use the roadway without interruption, so far as this record shows. The first written evidence that the roadway was used as matter of right or belonged to the owner of the John Harrison eighty is in the deed from him conveying with the land the road to it over the Thomas Harrison land. That Jarnecke desired some more tangible evidence of the right to use the road and secured the paper of 1869 we do not think is of itself sufficient to establish that the use of the road was merely permissive and subject to revocation at any time. In *Schmidt* v. *Brown,* 226 Ill. 590, after the road had been used by the Browns over Schmidt's land many years a parol agreement was made between them that the Browns' use of the road should continue, and it was claimed that

the Browns' right to use the road, by virtue of that agreement, became and was a license. This contention was not sustained, and while there are some differences between the facts of that case and this one, the law announced in that case is applicable to this case. The character of the use of the road here in question was such as would indicate it was under claim of right. On the east of the road was the hedge fence between the Marshall land and appellees' land, and the rail fence west of the road was about two rods west of the hedge fence. It appears quite evident Jarnecke assumed he acquired the right to use the road when he bought the John Harrison eighty, and the instrument of March, 1869, is no more than an indication that Jarnecke desired, as a matter of precaution, to have something to evidence Thomas Harrison's recognition of the right he already enjoyed. The character of Jarnecke's use was not changed. *Beattie* v. *Whipple,* 154 Ill. 273; *McMahill* v. *Torrence,* 163 id. 277.

It is further contended by appellees that the instrument of March, 1869, at least shows that the right claimed was to only a sufficient roadway for a wagon to pass over; that 10 feet is sufficient for that purpose, and that the court erred in decreeing a roadway 16½ feet wide. If we are correct in holding the instrument of March, 1869, did not affect the character of the right then existing and enjoyed, it could not restrict that right to a narrower strip for the roadway than was previously enjoyed. The proof sustains the conclusion that the strip actually used for a roadway was much wider than a mere wagon track. Travel was not always in the same track. When the traveled track became bad the travel would shift to another track. A traveled way was required and used wide enough for wagons to pass each other on it. From 16 to 18 feet of the space between the fences was used for travel. The rail fence decayed and disappeared about 1870 or 1875, but the travel continued substantially along the same roadway as before

that. The roadway used was wide enough to drive a drag over it 14 feet wide, a harvesting machine a foot or two wider, a threshing machine a little wider than a wagon, and to drive domestic animals over. The proof shows the roadway was much used for all the various purposes of roads generally, and fully warranted the finding that it was 16½ feet wide.

Appellants appealed from the decree because they insist the court erroneously held they had no right to repair or improve the roadway, and that the acts of grading and ditching their father was doing and threatening to do when the suit was begun were contrary to appellees' rights and unlawful. The evidence showed that at times the roadway became impassable for certain vehicles, and that the water coming down the road washed away soil until the surface of the roadway became slightly lower than the surrounding surface. The decree finds that in the center the road became like a ditch. The appellants' father and others had dragged the road for many years, but its condition became such that dragging would not put it in shape for reasonable use, and appellants' father in 1917 plowed furrows on each side of the road and with a road grader placed the plowed-up earth on the roadway, slightly elevating its surface. His testimony was taken before his death, and he testified he graded the road up about on a level with the surrounding surface, and that the ditch made on the west side was six or seven inches deep, the east bank sloping up to the road. One of appellees testified the road was graded up five or six inches and that the ditch on the west side was twelve or fourteen inches deep. Appellees insist the repairs made to the road were an unlawful interference with their rights; that they had cut the grass in the roadway, and the ditch interfered with turning teams in their field. Appellees concede a grant of a right of way carries with it the right to do whatever is reasonably necessary to the use of it, and argue that while a right by prescription

implies a grant, it only carries with it the right to do the things which have been done during the prescriptive period.

The right to the roadway in question, the decree finds, was acquired by prescription and not by express grant. Title by prescription presumes a grant, (*Wessels* v. *Colebank,* 174 Ill. 618,) and in case of a roadway over land of others carries the right to do whatever is reasonably necessary for the reasonable use of it for the purpose for which it was acquired. (*Parks* v. *Bishop,* 120 Mass. 340.) In *Espenscheid* v. *Bauer,* 235 Ill. 172, it was held the owner of land over which a right of way had been acquired by prescription had no right to hinder or obstruct its use, and that the owner of the right of way had a right to do all things necessary to preserve the easement and to keep it in repair. The common and ordinary use which establishes the right to an easement by prescription limits and qualifies it so that it cannot be devoted to different uses and purposes. Of necessity the owner of the easement must be allowed to do such things in the way of repairs as to make the easement reasonably usable, having due regard to the rights of the owner of the land. The owner of the land has the right of full dominion and use of his land, except so far as reasonably necessary to the enjoyment of the easement. The general rules governing the subject are stated in Tiffany on Real Property, (vol. 2, sec. 370) : "Thus, one having a right of way may prepare the land for its exercise according to the nature of the way,—that is, according as it may be a footway, a horseway, or a way for all teams and carriages,—and he may subsequently make alterations in the servient tenement in so far as this may be necessitated by a change of conditions for which he is not responsible. He cannot, however, make alterations in the servient tenement which are not necessary for the exercise of the easement, even though they conduce to the convenience of its exercise, if such alterations will injuriously affect the servient tenement."

What acts of repair are reasonable to the use and enjoyment of an easement are questions of fact to be determined in each particular case and depend upon the extent of the lawful use of the easement. Some cases in which this subject was considered are *Brown* v. *Stone,* 10 Gray, 61; 69 Am. Dec. 303; *United New Jersey Railroad and Canal Co.* v. *Crucible Steel Co.* 85 N. J. Eq. 87; *Atkins* v. *Bordman,* 2 Metc. 457; 37 Am. Dec. 100; *Herman* v. *Roberts,* 119 N. Y. 37; 7 L. R. A. 226; *McMillan* v. *Cronin,* 75 N. Y. 474. Under the general rules governing the subject, it cannot reasonably be held that if the weather, action of the water and travel had reduced the surface of this road, or portions of it, to a level below its original surface, so as to seriously interfere with its reasonable use, the owner of the way would not be allowed to make such repairs as could be made without disturbing the owner of the fee in the use and enjoyment of his land adjoining the road. He would, we think, under the law, have a right to restore the grade to its original level, if he could do so within the limits of the road and without entering upon the adjoining land. The soil for that purpose could not be taken from appellees' land, for no duty rested on them to repair or furnish material for repairs. We are of opinion appellants might lawfully plow a furrow on the side of the roadway within its boundaries and place the earth on the traveled way if that was reasonably necessary to the proper use of the easement. In doing so they would be required to do the work in such a manner as not to obstruct appellees in the use of their land adjoining the road. We are not satisfied that the proof shows what appellants did in repairing the road was unlawful. They removed from the side of the road some earth and placed it on the surface. Appellees claim in doing so they made a ditch between their land and the road twelve or fourteen inches deep. If none of the soil was taken from appellees' land outside the roadway we are unable to say that was necessarily an unlawful

act. But appellants' proof tended to show the ditch was only six or seven inches deep, and in our opinion it is not shown by the proof in this record that the acts committed were unreasonable and unlawful. Each of the parties had legal rights and duties. Appellants had not the right to appropriate land of appellees outside the right of way to repair it, and appellees cannot by an unreasonable claim that they would be injured and their use of their land be interfered with, substantially destroy the easement or materially interfere with its reasonable use. As we understand the decree, the court was of opinion appellants had no right to repair the roadway in any manner except by drawing a drag over its surface, and appellants were enjoined from using the soil from the strip for grading it, from placing on the roadway any stone or other grading material, and were ordered to restore the surface of the roadway to the same condition it was in before the plowing and grading were done. They were enjoined from doing anything except to use the roadway to pass over on foot or with ordinary farm vehicles, to drive horses, cattle and other farm stock over it, and to draw a drag over it for the purpose of leveling it when reasonably necessary for its use.

We are of the opinion the court did not err in finding and decreeing that a right of way 16½ feet wide existed in appellants, and that part of the decree is affirmed, but we think the decree erroneous in enjoining them from repairing the road in any way except to haul a drag over it and in ordering them to restore the roadway to the condition it was in before the repairs were made, and that part of the decree is reversed and the cause is remanded for the purpose of entering a decree conforming to the views expressed in this opinion.

*Reversed in part and remanded.*