SUSAN WORTMAN TRIPLETT *et al.*, Plaintiffs-Appellants, *v.* FRED J. BEUCKMAN, JR., *et al.*, Defendants-Appellees.

Fifth District   No. 75-466

Opinion filed July 19, 1976.—Rehearing denied August 11, 1976.

EBERSPACHER, J., dissenting.

Lawrence Alan Waldman and David J. Letvin, both of Cohn, Carr, Korein, Kunin and Brennan, of East St. Louis, for appellants.

Listeman, Bandy & Hamilton, of Belleville, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiffs appeal from a judgment for defendants rendered in a bench

trial in plaintiffs' action for a mandatory injunction requiring defendants to remove a causeway access to an island and replace it with a bridge. Defendants' counterclaim for a judgment for the cost of construction of the causeway resulted in a judgment for plaintiffs, from which no appeal was taken.

On March 10, 1971, Susan Triplett, as executrix of the estate of Francis L. Wortman, and defendants entered into a written contract for the sale of certain real property from the Wortman estate to defendants. The property conveyed consisted of an island, with residential improvements, except for a riparian 10-foot circumferential strip, which was retained by the grantor. Defendants were granted the right to use and cross that 10-foot strip of land but not to improve it. The lake in which the island was located and all of the land surrounding the lake were also part of the estate of Francis L. Wortman. Defendants were granted "the right to recreational use" of the lake "jointly with the owners of said lake." They were also granted an easement "for roadway purposes" across a described portion of the land surrounding the lake to a bridge, "thence North across said bridge a distance of 60 feet more or less to the island."

The bridge referred to provided the only above-water access to the island. It was wooden; and at the time of the conveyance was in need of repair. According to his uncontradicted testimony, defendant Fred Beuckman attempted to obtain the assistance of plaintiffs in repairing the bridge not long after defendants began to occupy the island residence. However, in response to this request Susan Triplett had stated "that's not my baby, it's all yours." Thereafter defendants repaired the bridge by resurfacing it with concrete and iron reinforcing rods. These repairs proved unsuccessful when a portion of the bridge "gave way." Consequently, defendants removed the bridge, filled the same area with soil, rock, and concrete, paved the surface with asphalt, and covered the sides of the fill with stone.

According to the testimony of Susan Triplett and William Wortman, the removal of the bridge and construction of the causeway deprived the plaintiffs of the fastest or most convenient water access from some points along the lake to other points and cut off plaintiffs' ability to take advantage of the circular nature of the lake for boating and water-skiing activities. Plaintiffs introduced evidence that prior to the construction of the causeway they were able to boat and waterski completely around the island by passing under the bridge. Accordingly the causeway constituted a severe restriction on the recreational use of their lake. In the opinion of Susan Triplett the property surrounding the lake would decrease in value as a consequence of the construction of the causeway.

Fred Beuckman, on the other hand, testified that at the time the bridge was removed "there was hardly any water underneath the bridge to start

with. It was all dried up." In Beuckman's opinion it would not have been possible to water-ski under the bridge "unless you put wheels on the bottoms of the skis, cause there was no water there at all hardly."

Joan Beuckman testified that the causeway was "[m]uch more attractive" than the bridge. Additionally an engineer and two iron workers testified that they had advised defendants prior to the removal of the bridge that the bridge could not be sufficiently repaired and would have to be replaced.

Based upon the testimony and the trial court's personal viewing (by stipulation of the parties) of the causeway, the court found "[t]he entire result is a practical result to an unusual problem and presents a reasonably attractive access to the 'island' [now 'peninsula']." The court also found that any injury to plaintiffs because of the construction of the causeway "was occasioned by plaintiffs' joint and several acts of disinterest or refusal to cooperate," and refused to issue the requested injunction.

We are of the opinion that the trial court erred in refusing to issue a mandatory injunction requiring the removal of the causeway and reconstruction of the bridge. The easement in this case was determined by express grant. The grant fixed the passage over the water or lakebed as being "across" a bridge then in existence at a described location. This situation is significantly different from one in which the easement is described without reference to a particular structure, such as a bridge, or one in which the easement arises by implication, such as a way of necessity. The parties could have agreed upon some different means of access to the island, as, for example, by ford or ferry or causeway, which could have imposed a lesser or greater burden upon the servient tenement. However, they did not. In light of the fact that the lake was and is used primarily for recreation, the limitation to access by bridge cannot be ignored. As is stated in the Restatement of Property (1944):

> "The use made of the servient tenement prior to the creation of an easement by conveyance may be a factor in ascertaining the extent of the easement." 5 Restatement of Property, §483, Comment *i*, at 3018 (1944).

■■■ It is well settled that, in the absence of an agreement to the contrary, the owner of the easement has not only the right but the duty to keep the easement in repair, while the owner of the servient tenement has no duty to either put or keep the easement in repair. (*Murtha v. O'Heron*, 178 Ill. App. 347; *Savoie v. Town of Bourbonnais*, 339 Ill. App. 551, 90 N.E.2d 645; *Zacny v. Sasyk*, 30 Ill. App. 3d 93, 332 N.E.2d 568; 5 Restatement of Property §485; 3 Tiffany, Real Property §810, at 349 (1939); 25 Am. Jur. 2d *Easements and Licenses* §85 (1966).) The only duty the owner of the servient tenement has is to not interfere with the use of the easement for purposes of access by the owner of the dominant

tenement, that is, the owner of the easement. *Zacny v. Sasyk*; 3 Tiffany, Real Property §810, at 349 (1939); 25 Am. Jur. 2d *Easements and Licenses* §89 (1966); 28 C.J.S. *Easements* §91a (1941).

It has also been stated that once the point or place at which, or line along which, an easement is to be exercised is fixed, whether by express grant or otherwise by agreement or acquiescence, neither of the parties can change such location without the consent of the other. *(Sullivan v. Bagby,* 335 Ill. 192, 166 N.E. 449; 3 Tiffany, Real Property §806, at 334 (1939); 25 Am. Jur. 2d *Easements and Licenses* §87 (1966).) Moreover, although the owner of the dominant estate has the duty to maintain and repair the easement, he cannot make a material alteration in the character of the easement, even though it be more to his convenience to do so, if the alteration places a greater burden upon the servient estate or interferes with the use and enjoyment of the servient estate by its owner. *Sell v. Finke,* 295 Ill. 470, 129 N.E. 90; *Doan v. Allgood,* 310 Ill. 381, 141 N.E. 779; 3 Tiffany, Real Property (1966) §810, at 347-48 (1939); 25 Am. Jur. 2d *Easements and Licenses* §87 (1966); 28 C.J.S. *Easements* §95b(1941).

In light of the above authorities, it is apparent that the duty to maintain and repair the bridge in the instant case was that of defendants, the Beuckmans. In destroying the bridge and constructing a causeway, defendants materially altered the character of the easement and increased the burden on the servient tenement. Plaintiffs are unable to use and enjoy that portion of the lake or lakebed which was previously accessible under the bridge, but which now is covered by the causeway. Plaintiffs had the right to have the bridge maintained and are entitled to injunctive relief; and the court below erred in refusing to grant that relief.

We expressly decline to conclude, however, that defendants should be required to reconstruct a bridge 60 feet in length. A court of chancery can balance the hardships involved and grant relief upon whatever terms it deems equitable when the owner of either the dominant or the servient estate interferes with the rights of the other, under a mistaken belief that he owns the area or structure in dispute. (See *Beloit Foundry Co. v. Ryan,* 28 Ill. 2d 379, 192 N.E.2d 384.) In the instant case both Susan Triplett and Fred Beuckman testified that they had thought that the Beuckmans owned the bridge as a result of the conveyance discussed above. It was under this mistaken belief that Fred Beuckman had the bridge removed.

Furthermore, although Susan Triplett and William Wortman testified that plaintiffs had at some previous time been able to boat and water-ski under the bridge, Fred Beuckman testified that at the time the bridge was removed there was not a sufficient amount of water beneath the bridge for water-skiing. Neither the testimony of Beuckman nor that of Triplett and Wortman was contradicted.

■■ We, of course, do not have, and cannot have, the benefit of a

personal examination of the lake to determine what amount of water may have been in that part of the lake at the time the bridge was destroyed or at the time of the decision of the trial court. Nor do we know what amount of water may have been under the bridge at times prior to its removal or what amount might have been there in the future. The trial court has had the opportunity of personal examination. Based upon that examination, the trial court should be able to determine the length of the bridge span necessary for the reasonable use of the water that can reasonably be expected to be in that portion of the lake. It may very well be that use can be made of some of the causeway and that a bridge of less than 60 feet is sufficient for recreational use of that portion of the lake. If so, the trial court, acting in equity, should frame the relief granted in such terms as will take those factors into account.

We, therefore, reverse the judgment of the trial court with respect to plaintiffs' complaint and remand for further proceedings consistent with this opinion.

Reversed and remanded with directions.

G. J. MORAN, J., concurs.

Mr. JUSTICE EBERSPACHER, dissenting:

I agree, as the majority states, "A court of chancery can balance the hardships involved and grant relief upon whatever terms it deems equitable when the owner of either the dominant or the servient estate interferes with the rights of the other, under a mistaken belief that he owns the area or structure in dispute." That, however, is not the function of an intermediate reviewing court.

It appears that the trial court has applied that principle, after hearing the testimony and examining the premises. It has obviously balanced the hardships involved and granted relief upon terms it deemed equitable. The majority is saying, balance the hardships again and grant relief upon different terms which we consider equitable. If the principal is to be here applied, the uncontradicted testimony that there is and was at the point where the bridge existed, an inadequate amount of water to boat, ski or swim, has to be, and obviously was, taken into consideration.