418 So.2d 1040 (1982)
Norman H. ZIPKIN, Appellant,
v.
RUBIN CONSTRUCTION COMPANY, et al., Appellees.
Nos. 80-965, 80-1009.
District Court of Appeal of Florida, Fourth District.
July 7, 1982.
Rehearing Denied September 20, 1982.
*1041 Larry Klein, West Palm Beach, and Zipkin & Finn, Miami, for appellant.
David F. Cooney of Grimmett, Conrad, Scherer & James, P.A., Fort Lauderdale, for appellees.
HURLEY, Judge.
This appeal challenges the propriety of a summary judgment in favor of a landowner in a premises liability case. We conclude that plaintiff's decedent was an uninvited licensee and that the landowner did not breach a duty of care by failing to warn of an obvious danger. Accordingly, we affirm.
The factual background of this case begins in 1967 when James Wilkinson purchased a strip of land which bordered the northern edge of his property in western Palm Beach County. The warranty deed contained the following provision:
The grantor reserves unto herself, her heirs, administrators, successors and assigns forever a right of ingress and egress for vehicular and pedestrian traffic over the north 20 feet of the above described lands, but with no duty of the grantee to maintain such road as may exist thereon.
The above easement consisted of a "dike road" which ran from east to west across the newly-acquired property. As suggested by its name, it served a dual function. As a dike it separated water and drainage systems in one farm from another. As a roadway it served as a connecting link to the public highway. The dike was composed of mud scooped out of the canal, piled into a mound and packed to form a levee. Deep canals bounded it to the north and south. The banks of the dike were steep, but not vertical. The top had been flattened to serve as a roadway and measured approximately eighteen to nineteen feet in width. It was about twelve feet from the road surface to the canal waters below.
In 1976, Harold Gilbert owned the easement and the land east of Wilkinson's. Gilbert's land contained a rock pit from which *1042 shell rock was extracted by the Rubin Construction Company. Apparently, a major road construction project was in the offing and Rubin hoped to supply all of the shell rock. In the same vein, a trucker by the name of Ramon Capote hoped to obtain the contract to haul shell rock from Gilbert's rock pit to the road construction site. Since this plan would necessitate heavy volume truck traffic over the dike road, Rubin and Capote agreed to resurface the dike road with a layer of shell rock.
On March 11, 1976, David Mariaca was working as a truck driver for Ramon Capote. Mariaca's job was to haul shell rock from Gilbert's rock pit to a point on the road where a bulldozer waited to spread the shell rock. The dumping procedure called for the trucks to drive around the bulldozer, dump the shell rock on the roadway and then proceed west on the dike road. Since the roadway was about eighteen feet wide and the bulldozer blade was ten feet wide and the trucks were eight feet wide, passing was a precarious maneuver which demanded extreme caution. To facilitate the procedure, the bulldozer would pull to the south side of the road and allow the left end of the blade to hang over the bank. This gave the trucks about two feet of clearance.
On Mariaca's third approach of the day, approximately forty-four feet from the rear of the bulldozer, his fully loaded truck went over the edge of the dike road and landed upside down in the canal. Mariaca drowned. State troopers investigating the accident determined that about two feet of the roadway at the edge had given way under the weight of the loaded truck.
Zipkin, as the representative of Mariaca's estate and on behalf of his wife and children, filed suit against a number of individuals including Wilkinson and his farming corporation. Zipkin alleged that Wilkinson and his corporation were negligent (a) in failing to maintain the dike road, and (b) in failing to warn plaintiff's decedent of latent defects in the road. Wilkinson and his corporation moved for summary judgment. The trial court granted the motion and this appeal ensued.
At the outset we reject Wilkinson's contention that the legal effect of the easement is to relieve him of all duty to third parties. In essence, he argues that his inability to exclude individuals from the easement absolves him of any duty of care. Perhaps if this were true, his argument would have merit. See, e.g., Levy v. Kimball, 50 Hawaii 497, 443 P.2d 142 (1968). In fact, however, Wilkinson's premise is incorrect. It is a basic tenet of real property law that "(t)he possessor of land subject to an easement created by conveyance is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating conveyance." Restatement (Second) of Property, § 486 (1976); see also 25 Am.Jur.2d Easements and Licenses, § 89 (1966). Inasmuch as the easement in this case merely permits ingress and egress to Gilbert's property, Wilkinson retains some authority over the road. He may use it himself and may permit others to use it so long as the use does not impede the right of ingress and egress. For example, Wilkinson might permit and even charge others to fish from the sides of the dike road. If he did so, it would be untenable to suggest that the existence of the easement would act to relieve Wilkinson of the normal duty of care owed to business invitees and invited licensees. Consequently, we hold that the easement in this case does not preclude consideration of the landowner's duty to third parties. At the same time, we hold the easement is a particularly relevant factor in determining the entrant's status vis-a-vis the landowner.[1]
Florida classifies entrants onto the land of another into the following three *1043 categories: (1) trespassers,[2] (2) uninvited licensees,[3] and (3) invited licensees and invitees.[4]Wood v. Camp, 284 So.2d 691 (Fla. 1973). The status of the entrant and the corresponding duty owed by the landowner must be gleaned from the relationship between the two. "[I]t is the relationship established between persons which must be the criterion for the duty owed." Id. at 694. Moreover, where the facts are not in dispute, it is appropriate for the court to fix the status of the entrant as a matter of law. Id. at 696.
In the case at bar, the easement guarantees a right of ingress and egress to the easement owner, his invitees, and his licensees. Additionally, it places the responsibility for repair squarely on the shoulders of the easement owner.[5] These factors are significant to the extent that they bear on the question of whether Wilkinson expressly or impliedly invited Mariaca onto the premises or whether Mariaca's activity amounted to a business dealing with Wilkinson. The undisputed evidence in the record reveals that the answer to both questions is "no." Although Wilkinson knew the road was being repaired, he had no involvement in the project. On the other hand, it is also undisputed that Gilbert, the easement owner, had an agreement with Rubin Construction Company for the sale of shell rock. Given these facts, it is inconceivable that Rubin's resurfacing of the road could be construed as a business deal with Wilkinson. Thus, Mariaca was not Wilkinson's invitee, nor was he a trespasser. Therefore we hold that he occupied the status of an uninvited licensee vis-a-vis Wilkinson, the landowner.[6]
*1044 The duty owed by a landowner to an uninvited licensee has been stated as follows:
The duty owed to a licensee is to refrain from wanton negligence or wilful misconduct which would injure him, to refrain from intentionally exposing him to danger and to warn him of a defect or condition known to the landowner to be dangerous when such danger is not open to ordinary observation by the licensee.
Hall v. Holton, 330 So.2d 81 (Fla. 2d DCA 1976), cert. denied, 348 So.2d 948 (Fla. 1977).
Focusing on the duty to warn, it is now generally held that a landowner must exercise reasonable care to warn uninvited licensees of all hidden perils which are unknown to the licensee but are known to the landowner. A hidden danger or peril is nothing more than an unreasonably dangerous condition that an uninvited licensee could not reasonably be expected to discover or appreciate. The landowner, however, has no duty to warn of conditions which a reasonable person would observe and avoid through the ordinary use of their senses. In short, superior knowledge of the danger is essential before there is a duty to warn. Vermont Mutual Insurance Co. v. Conway, 358 So.2d 123 (Fla. 1st DCA 1978); Rice v. Florida Power and Light Co., 363 So.2d 834 (Fla. 3d DCA 1978), cert. denied., 373 So.2d 460 (Fla. 1979).
Turning again to the case at bar, it is readily apparent that the cave-in of the road's edge beneath the weight of a fully loaded truck did not constitute a hidden peril. The composition of the road's surface, the angle of the bank, and the lack of guard rails were obvious for all to observe. Wilkinson's admission at deposition that a muck-based road would come apart does not constitute superior knowledge. The dangers inherent in driving too close to the edge of a road are within the realm of common experience. Moreover, in this case we have the added factors of a fully loaded truck nearing the side of a sharply inclined bank. The dangers were open and readily comprehensible. Consequently, based on the undisputed facts, we hold that the condition here did not constitute a hidden peril sufficient to impose a duty to warn. Thus, we conclude that the trial court was correct in granting the motion for summary judgment and in assessing costs against the plaintiff. The judgment is AFFIRMED.
LETTS, C.J., concurs.
ANSTEAD, J., dissents with opinion.
ANSTEAD, Judge, dissenting:
I concur in the majority's analysis of the law and conclusion as to the status of the deceased truck driver. I disagree, however, with the majority's conclusion that there is no material issue of fact as to the landowner's alleged breach of duty to the deceased.
Initially, it seems clear that responsibility for the tragic accident that took place must be shared by a number of people, including the deceased. The entire resurfacing operation, as pointed out in the majority opinion, was fraught with danger. It appears that the deceased was put in a position of having to walk a greased tightrope over the proverbial bottomless pit in order to carry out his assigned task of delivering shell rock. Given those circumstances it is tempting to simply conclude that he just went over the edge of the road and therefore was responsible for his own demise. However, there is evidence that the accident was caused by the collapse of the road rather than by the deceased driving over the edge. The majority has concluded that: "Wilkinson's admission at deposition that a muck-based road would come apart does not constitute superior knowledge." I cannot agree. Muck is highly unstable material. Anything constructed on a muck base may be subject to all kinds of problems. On the *1045 other hand, earth or dirt is much more stable. There is no evidence in this record that the deceased had knowledge that the dike road was subject to collapse because it was built on a muck base.
I also cannot agree with the majority's conclusion that: "The dangers inherent in driving too close to the edge of a road are within the realm of common experience." As pointed out above, roads may be composed of different materials, some more stable than others. It may be entirely safe to drive right along the edge of the roadway in the Rocky Mountains where the road is virtually solid rock. But it is an entirely different matter to drive on the edge of a roadway constructed of a mix of organic materials subject to continuous decomposition and eventual collapse. Awareness of the difference may be critical.
Given the present state of the record I would reverse the summary resolution of this case and remand for trial.
NOTES
[1] We emphasize that the only issue before the court at this juncture is the categorization of Mariaca's status vis-a-vis Wilkinson. We have not considered, nor do we express any opinion as to the appropriate categorization of Mariaca's status vis-a-vis Gilbert, the easement owner.
[2] A trespasser is one who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise. Page, The Law of Premises Liability, Section 2.2 (1976).
[3] An uninvited licensee is one who enters upon the property of another for his own convenience, pleasure, or benefit. Post v. Lunney, 261 So.2d 146 (Fla. 1972). The most practical definition of a licensee is any person who is neither a trespasser nor an invitee. Page, The Law of Premises Liability, Section 3.2 (1976).
[4] Florida has adopted the definition of an invitee found in the Restatement (Second) of Torts, Section 332 (1964):

(1) An invitee is either a public invitee or a business visitor.
(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.
Florida has expanded the invitee category to include "those who are `licensees by invitation' of the property owner, either by express or reasonably implied invitation." Wood v. Camp, 284 So.2d 691, 695 (Fla. 1973).
[5] This is consistent with the general rule that, absent an agreement to the contrary, the burden of maintenance and repair falls on the dominant tenement (easement owner) rather than the servient tenement (underlying land owner). 25 Am.Jur.2d Easements and Licenses § 85 (1966); Renden v. Geneva Development Corp., 61 Cal. Rptr. 463, 253 Cal. App.2d 578 (C.A.Cal. 1967); Triplett v. Beuckman, 40 Ill. App.3d 379, 352 N.E.2d 458 (Ill. App. 1976); Archaumbault v. Williams, 359 Mass. 742, 268 N.E.2d 926 (1971); James v. Politis, 361 N.Y.S.2d 613, 79 Misc.2d 941 (S.Ct.N.Y. 1974). This principle has been fully accepted in Florida. 20 Fla.Jur.2d Easements § 35 (1980); Sebastian River Drainage District v. Ansin, 29 Fla. Supp. 77 (1967), affirmed, 223 So.2d 57 (Fla.4th DCA 1969).
[6] In reaching the conclusion, we have decided not to follow Section 349 of the Restatement (Second) of Torts (1964) which provides:

A possessor of land over which there is a public highway or private right of way is not subject to liability for physical harm caused to travelers upon the highway or persons lawfully using the way by his failure to exercise reasonable care
(a) to maintain the highway or way in safe condition for their use, or
(b) to warn them of dangerous conditions in the way which, although not created by him, are known to him and which they neither know nor are likely to discover.
Similarly, we have declined to follow the view expressed in Triplett v. Beuckman, 40 Ill. App.3d 379, 352 N.E.2d 458, 460 (1976):
The only duty the owner of the servient tenement has is to not interfere with the use of the easement for purposes of access by the owner of the dominant tenement, that is, the owner of the easement.
Since an easement is essentially "a privilege which the owner of one tenement has a right to enjoy over the tenement of another," 25 Am.Jur.2d, Easements & Licenses, § 1, we find support for today's holding in Section 345 of the Restatement (Second) of Torts (1964) which provides in pertinent part:
[T]he liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee.