JOE BEGGS *et al.*, Plaintiffs-Appellees, *v.* LARRY RAGSDALE, Defendant-Appellant.

Fifth District   No. 5—83—0332

Opinion filed December 23, 1983.

Paul F. Henry, of Kruger and Henry, of Metropolis, for appellant.

Jack Williamson, of Vienna, for appellees.

JUSTICE KARNS delivered the opinion of the court:

Larry Ragsdale appeals from subparagraphs (e) and (f) of the judgment of the Johnson County circuit court which permit holders of an easement bisecting Ragsdale's land to construct fences the length of the easement and to limit movement across the easement to a single pair of gates. He seeks reversal of these subparagraphs or modification as permitted by Supreme Court Rule 366(a) (87 Ill. 2d R. 366(a)).

The seeds of this dispute were sown in 1904 when the heirs of M. J. Ragsdale made two concurrent conveyances of agricultural land. One group of heirs conveyed by quitclaim deed in fee simple to E. L. Ragsdale:

"The West (½) half of the North West fourth of the North West Quarter of Section No. (33) Thirty-three; 20 acres, more or less, and a part of the North East Quarter of Section No. (32) Thirty-two; bounded as follows: Beginning at the North East corner of said tract; running thence South 85° West 15.62 chains, thence South 3° 40' East 36.21 chains to road; thence Easterly along road 15.62 chains to section line; thence North with section line 34.85 chains to place of beginning, *except 16 feet on west side for road*. Containing 55.49 acres, more or less: and being 75.49 acres, more or less in all in Township No. 12 Twelve South in Range No. (2) two East.

It is hereby agreed that the road above excepted is to remain open for the use of the public for a road." (Emphasis added.)

This is the property now owned by Larry Ragsdale. Although the "16 feet on west side for road" was not conveyed in 1904, Larry Ragsdale gained title to it by inheritance in 1981. This strip of land runs northward from a public highway through Ragsdale's land for approximately 2,400 feet to the Beggs property which lies along the Cache River. It divides Ragsdale's 215 acres into two sizeable parcels, only one of which contains water for his cattle.

In a concurrent conveyance by quitclaim deed, another group of Ragsdale heirs transferred to Samuel C. Ragsdale in fee simple an adjoining property:

"The South East fourth of the South East quarter and the east (½) Half of the North East fourth of the South east quarter of Section No. (29) twenty-nine, in Township No. (12) twelve South in Range No. (2) two, east of the 3rd P.M., containing 60 acres, more or less."

This is the property now held by Joe and Sheryl Beggs (hereinafter Beggs). The only access to this river bottom property is across Ragsdale's land, but it has not always been by means of the 16-foot strip. Other field roads have been used over the years.

Both properties have long been used for agricultural purposes. A fence around the Ragsdale farm has marked off the two properties since the time of the original conveyances. There are no improvements on the river bottom land which Beggs uses only for row crops. There are buildings and farm-related improvements on Ragsdale's land which he uses for both cattle and crops.

Joe Beggs farmed the river land for more than 20 years, while it was still owned by members of the Ragsdale family. In April 1982, Beggs purchased the land. Shortly thereafter this conflict over the use of the 16-foot strip grew up between Ragsdale and Beggs. Beggs successfully sought a temporary restraining order which compelled Ragsdale to remove a vehicle blocking the strip. In considering Beggs' subsequent petition to show cause why Ragsdale should not be held in contempt for blocking the roadway with wire and a "No Trespassing" sign, the court accepted the parties' stipulation to the appointment of a surveyor to determine the location of the strip. The court ordered Ragsdale to put plastic handles on electric wires across the strip so Beggs could easily move them as he used the path. Beggs was ordered to refrain from using another path around Ragsdale's barn.

The survey marking off the 16-foot roadway was filed on October 6, 1982. On January 3, 1983, Beggs filed a "Motion for Order Establishing Roadway and For Injunctive Relief." He asked the court to declare the strip, as surveyed, to be a permanent public roadway which the Beggses and their successors in interest were entitled to use as an access road to the bottom land. Beggs prayed that neither he nor Ragsdale be permitted to obstruct the roadway, to install gates or fences at either end, or to use electrical wires to enclose it, but that either party be allowed to fence along the sides of the roadway with barbed wire.

After receiving extensive evidence both by exhibit and testimony regarding the continuous agricultural use of both parcels of land, the various routes taken across the Ragsdale land to the river bottom property, and the condition of the 16-foot strip at various points in its history, the trial court ruled that Beggs had "a permanent easement appurtenant from the dominant estate across and over the defendant's servient estate for the use and purpose of ingress and egress to plaintiffs [*sic*] dominant estate" which "had not been abandoned or lost by adverse possession." The court ruled orally that Beggs did not

have the right to fence along the right of way. Ragsdale was given leave to submit a brief on his use of the servient estate. His memorandum, submitted on March 21, 1983, argued that he was entitled to maintain electrical wires running across the easement because they were necessary to his cattle operation and did not unreasonably interfere with Beggs' use of the roadway.

On April 4, 1983, the court filed its letter to counsel in which it set forth further findings in the matter:

"* * *

(3) Defendant shall not obstruct the easement in any manner except as follows: [Ragsdale] may place an unlocked, easy to open and close, non-electrical gate across the entrance to the easement on Route 146 and at the end of the easement on the fence line between the Beggs Farm and the Ragsdale Farm.

(4) Neither party may build a fence along the east or west side of the easement without giving 21 days notice in writing to the other party."

In letters to the court, counsel on both sides set out their opposing views of the proposal for fencing the easement. Making these letters part of the record, the court responded on April 15, 1983, in a memorandum which allowed either party to build a nonelectrical fence capable of restraining cattle but furnished with a set of gates sufficient to allow cattle across the easement. Ragsdale was restricted to using only so much of the easement as was necessary to herd his cattle through the gates.

In its final judgment order of April 15, 1983, the court incorporated its earlier rulings that the 16-foot strip was an easement appurtenant to the dominant estate owned by Beggs which Ragsdale was not allowed to obstruct with anything except easily worked nonelectrical gates at either end of the easement. Subparagraph (e) allowed either party to build a nonelectrical fence on both sides of the easement as long as there was a pair of gates opposite each other through which cattle could be driven. In the event such fences and gates were built, subparagraph (f) limited Ragsdale to using only the portion of the easement between the gates and held him liable for damages to the easement caused by his cattle. Subparagraph (g) ordered Ragsdale to remove immediately "any wires, gates, fences, and/or feed residue, and any other obstruction from the easement." Subparagraph (h) gave Beggs the right to use and maintain the easement as a road. It is only from subparagraphs (e) and (f) which Ragsdale now appeals. There is no cross-appeal from any provision of the judgment.

The only issue is whether Beggs, the holder of an easement ap-

purtenant used only to reach agricultural land may fence the length of the easement so as to create a single point of passage across the easement for cattle and farm machinery belonging to Ragsdale, owner of the servient estate. We do not think such a fencing arrangement is justified and therefore exercise the discretion granted to us by Supreme Court Rule 366(a) to modify the judgment by deleting subparagraphs (e) and (f). 87 Ill. 2d R. 366(a).

A principle of concurrent rather than exclusive use underlies the law concerning easements. The owner of the servient estate must not interfere with the use of the easement for purposes of access by the owner of the dominant estate. (*Zacny v. Sasyk* (1975), 30 Ill. App. 3d 93, 332 N.E.2d 568.) For his part, the owner of the dominant estate has the right to maintain the easement, although he cannot, for the sake of his convenience, materially alter the easement so as to place a greater burden on the servient estate or interfere with the use and enjoyment of the servient estate by its owner. (*Sell v. Finke* (1920), 295 Ill. 470, 129 N.E. 90; *Triplett v. Beuckman* (1976), 40 Ill. App. 3d 379, 352 N.E.2d 458.) Clearly, use of an easement by both landowners "must be permitted in accordance with their individual interests." *Keessen v. Zarattini* (1969), 119 Ill. App. 2d 284, 292, 256 N.E.2d 377, 382.

Under certain circumstances the separate interests of the two parties in the easements cannot be easily reconciled. In such a case the owner of the easement may take such measures in preparing or maintaining the easement as are necessary to his reasonable use of it. (*Sell v. Finke* (1920), 295 Ill. 470, 129 N.E. 90.) This is as true for proposals to erect fences the length of the easement as it is for ditching, grading, or other methods of preserving the easement. (*Doan v. Allgood* (1923), 310 Ill. 381, 141 N.E. 779.) We find *Doan* squarely applicable to the case at hand. In *Doan* an easement holder fenced in the roadway to make it easier to drive his cattle along it. As a result, the owner of the servient estate could no longer turn his tractor on the easement and lost the ability to farm the full extent of his land. The reviewing court found that the convenience of the fences did not justify the exclusion of the owner of the servient land from the easement. In arriving at its decision, the court observed that an owner of a servient estate who ran cattle on his land had a duty to use reasonable care so his cattle did not obstruct the easement. *Doan v. Allgood* (1923), 310 Ill. 381, 386, 141 N.E. 779, 781-82.

Although Beggs argues that *Doan* is inapposite to the present case because in *Doan* the fences were intended to keep cattle within the easement and here they are designed to keep them out, we do not

read *Doan* so narrowly. We believe it articulates the test by which to judge the efforts of an easement holder to insure his use of the easement. "[T]he necessity and reasonableness of the means made use of to adapt the road to the [easement holder's] use are questions of fact to be determined by the trial court." The trial court's determination must be sustained by the evidence. *Doan v. Allgood* (1923), 310 Ill. 381, 387-88, 141 N.E. 779.

While the trial court's judgment allowing either party to build fences along the easement upon proper notice to the other party appears even-handed, it, in fact, seriously disadvantages Ragsdale's free use of the servient property as a cattle range because it permits a barrier to be raised between the only water source and portions of grazing lands. Although he could drive his cattle from one pasture to another through the gates, their passage would be limited to a single crossing, in effect giving Ragsdale an easement on his own property and increasing the difficulty of managing his cattle. A judgment so restricting the use of the servient estate must be based on a clear showing that it is necessary to protect reasonable use of the easement.

At the February 25, 1983, hearing on Beggs' motion to establish the roadway and to give Beggs the right to string barbed wire on both sides of the easement, Beggs testified that prior to April of 1982 he never had any trouble getting across Ragsdale's land to his own acreage. After April of 1982, Beggs complained of obstructions in the 16-foot easement caused by a parked vehicle, debris, electrified wires and the footings of concrete pillars erected as entrance posts by Ragsdale. He also alleged that the right of way had been damaged by Ragsdale's cattle milling around on it as they ate hay left there for them, a contention denied by Ragsdale. Although Ragsdale admitted he drove cattle across the easement and that they could sometimes walk in the road, Beggs did not allege a single incident where his use of the easement was obstructed by cattle on the unfenced easement or by ruts left by them. He told of once having to maneuver his vehicles through cattle in a fenced enclosure because he was following the path marked out by the survey which showed the easement running through a pre-existing corral established by Ragsdale. In view of the fact that Ragsdale does not appeal from subparagraphs (d) and (g) of the judgment which require him to remove all wires, fences, and obstructions from the easement, we believe there is no need for Beggs to repeat such maneuvers.

Both testimony and photographs indicated that the easement was marred by deep ruts. It appeared that these were the natural result of moving heavy equipment over wet ground as well as the passage of

cattle. Such a condition does not require cattle-proof fences. Beggs has the right to grade, gravel, or otherwise improve the surface of the easement to allow his reasonable use of it. Just after the survey established the path of the easement, Beggs exercised this right for the first time by spreading gravel on the easement.

■ Considering the record as a whole, we find that Beggs has failed to show that fencing in the easement and its attendant burdens on the servient estate are necessary to his reasonable use of the easement. In the absence of such a showing, subparagraphs (e) and (f) of the judgment are contrary to the manifest weight of the evidence. Exercising the discretion granted to us by Supreme Court Rule 366(a) (87 Ill. 2d R. 366(a)), we delete subparagraphs (e) and (f) from the trial court's order and, as so modified, we affirm the judgment of the circuit court of Johnson County.

Affirmed as modified.

HARRISON, P.J., and WELCH, J., concur.