
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2015 FEB 23 AM 8: 59

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| NEIL DONNER and KIYOMI G. DONNER, husband and wife, and the marital community thereof, | ) ) ) ) | NO. 71441-4-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) ) | |
| JAMES M. BLUE, as Trustee for Northwest Neurological Surgery Trust; JOHN W. RIEKE and GENE E. ROBERTSON, husband and wife, and the marital community thereof; JAMES C. HAWKANSON and JANE H. HAWKANSON, husband and wife, and the marital community thereof; JOHN E. SPRING, a single person; SHANE KIM and DANA KIM, husband and wife, and the marital community thereof, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION  FILED: February 23, 2015 |
| Respondent. | ) ) ) | |

LAU, J. — Homeowners Neil and Kiyomi Donner appeal an order for summary judgment dismissing their breach of easement, negligence, nuisance, and trespass claims against neighboring homeowners for damages to their residence resulting from a clogged private sewer line shared by the parties. They argue the trial court erred when

it dismissed their claims because respondent James Blue is liable as the owner of the tree that obstructed the sewer line and because the remaining respondents failed to fulfill an affirmative duty to maintain the sewer line. Because no controlling authority imposes an affirmative duty to inspect the shared sewer line, we affirm the order dismissing the Donners' claims on summary judgment. We affirm the trial court's order allocating repair costs to the uphill respondents.

## FACTS

The material facts are undisputed. Respondents John Spring, James and Jane Hawkanson, Shane and Dana Kim, and John Rieke and Gene Robertson are all uphill neighbors to the Donner home.[1] These uphill respondents' homes are situated on a steep slope, east to west, toward Lake Washington. Downhill from the uphill respondents and adjacent to the Donners' home is unimproved property owned by James Blue, as trustee for the Northwest Neurological Trust. The Blue property fronts on West Mercer Way on Mercer Island. There are no structures on the property, only natural trees and foliage. A common private sewer line serves all the parties to the litigation except for the Blue property.[2] The sewer line runs under Blue's property and connects to the public sewer line under West Mercer Way. Unlike the other parties, Blue's property makes no use of the sewer line since it is undeveloped.

During the week of July 30, 2012, tree roots on the Blue property blocked the sewer and the Donners—who were out of town that week—came home and discovered

---

[1] We refer to these uphill neighbors as the "uphill respondents" where necessary for clarity.

[2] The common sewer line runs along a utility easement created through various instruments not at issue in this case.

sewage had filled their basement. None of the parties had ever experienced a blockage of the sewer line. The sewage originated from the uphill respondents' homes. The Donners filed a complaint on May 22, 2013, against Blue and the uphill respondents to recover damages from the sewage. The Donners argued the uphill respondents were liable under several theories, including negligence, trespass, nuisance, strict liability, and breach of easement. In November 2013, all respondents moved for summary judgment to dismiss the Donners' claims. The trial court granted the respondents' motions for summary judgment but directed the uphill respondents to pay an equal share (along with the Donners) to repair the sewer line.[3] The court awarded no consequential damages related to the damage to the Donners' home. The Donners appeal.

## ANALYSIS

### Standard of Review

This court reviews summary judgment de novo, engaging in the same inquiry as the trial court, and views the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party. Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794–95, 64 P.3d 22 (2003). A trial court properly grants summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

The parties do not dispute that the main issue here is whether the respondents owe an affirmative duty to inspect the common sewer line.

---

[3] Blue was not ordered to pay anything to repair the sewer. Because the parcel was undeveloped, Blue did not use or benefit from the sewer line.

Blue's Liability

The Donners argue that Blue is liable under two theories. First, they argue that Blue is liable under Forbus v. Knight, 24 Wn.2d 297, 163 P.2d 822 (1945) because he owned the offending agency (the tree) causing the damage. Second, they argue that under Sunnyside Valley Irr. Dist. v. Dickie, 111 Wn. App. 209, 43 P.3d 1277 (2002), aff'd, 149 Wn.2d 873, 73 P.3d 369 (2003), Blue owed a duty as the property owner burdened by the easement to remove obstacles which could interfere with the Donners' right to use the sewer line easement. Both Forbus and Sunnyside are distinguishable from this case.

The Donners claim that Blue is liable under Forbus because he owned the tree that clogged the sewer line. Forbus involved two adjacent property owners. There, roots from a tree on the defendant's property invaded the plaintiff's property and clogged a sewer line, causing water and waste to flood the plaintiff's basement. Forbus, 24 Wn.2d at 298–302. The court reasoned that the owner of the offending agency owes a duty to restrain the encroachment:

> It is not the law that the owner of premises is to be charged with negligence if he fails to take steps to make his property secure against invasion or injury by an adjoining landowner. It is the duty of the one who is the owner of the offending agency to restrain its encroachment upon the property of another, not the duty of the victim to defend or protect himself against such encroachment and its consequent injury.

Forbus, 24 Wn.2d at 313. Based on this rationale, the Donners contend Blue is liable for the damage caused by his tree because he owed a duty to restrain its encroachment.

-4-

71441-4-I/5

Unlike Forbus, the dispute here implicates the rights and obligations under a private sewer easement. In Forbus, the tree invaded the plaintiff's property, clogging the plaintiff's sewer pipe. Forbus, 24 Wn.2d at 304. Here, the tree roots did not invade the Donners' property but, instead, clogged the sewer line underneath Blue's property. Like all the uphill respondents, the Donners use the common side sewer easement to transfer sewage from their properties. Blue is not connected to the sewer line. He therefore derives no benefit from or use of the sewer line.

Blue's property is burdened by the easement and the Donners receive the benefit of the easement. Under easement law, Blue's estate is the "servient" estate and the Donners' estate is the "dominant" estate. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.1, at 80 (2d ed. 2004). Generally, responsibility for the maintenance and repair of an easement to keep it in proper condition lies with the owner of the easement—the dominant estate. 1 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK § 10.4(2)(c) (3d ed. 1997).

And according to a leading treatise on real property easements, servient owners ordinarily owe no duty to the dominant owner to repair or maintain the easement unless an agreement varies these duties:[4]

> Servient owners, according to the New Restatement, have no duty to the dominant owner to "repair or maintain the servient estate or the facilities used in the enjoyment of the easement or profit." Because the duty to maintain an easement ordinarily rests on the easement owner, servient owners had no duty to construct stairs to the beach for the benefit of a dominant estate owner.

---

[4] The parties agree no agreements govern the alleged affirmative repair-maintenance obligations.

7 Thompson on Real Property: The Law of Easements § 60.05(a) (David A. Thomas ed., 2d ed. 2006) (footnote omitted) (quoting Restatement (Third) of Prop.: Servitudes § 4.13(3) (2000)). There is scant Washington case law on point. Blue cites several cases from other states discussing in general the lack of any duty on the servient estate owner to remove or cut back vegetation that encroached onto an easement. Smith v. Muellner, 283 Conn. 510, 932 A.2d 382 (2007); Schwartz v. Murphy, 74 Conn. App. 286, 812 A.2d 87 (2002); Suitts v. McMurtrey, 97 Idaho 416, 546 P.2d 62 (1976). The Donners properly concede that easement owners owe a duty to maintain the easement benefitting their dominant estates. Appellants' Reply Br. at 1. Nevertheless, the Donners argue with no citation to authority that Forbus controls over easement law. We are unaware of any case that extends the rule in Forbus to the easement interest context. We decline to do so here.

Next, the Donners cite Sunnyside, arguing that "as the servient estate owner, [Blue owed] a duty to remove obstacles which could interfere with the Donners' right to use the sewer line." Br. of Appellant at 8. Sunnyside does not support this argument. In Sunnyside, we concluded that the servient estate owner needed to remove several trees so that the plaintiff could enlarge irrigation laterals running across the defendant's property. Sunnyside, 149 Wn.2d at 878–88. We did not hold that the trees interfered with the plaintiff's right to use the easement laterals. Rather, the easement agreement's express language granted the easement owner the right to enlarge the laterals: "We hold the easement granted to the United States by the Dickies' predecessor gave the specific right to enlarge the lateral as deep and wide as necessary . . . ." Sunnyside, 111 Wn. App. at 218. Our Supreme Court affirmed, relying on the same rationale: "[A]n

easement can be expanded over time if the express terms of the easement manifest a clear intention by the original parties to modify the initial scope based on future demands." Sunnyside, 149 Wn.2d at 884. The specific easement at issue in Sunnyside provided the easement owner "'the right and permission to enter upon said land for the . . . enlargement and repair of said . . . laterals . . . .'" Sunnyside, 149 Wn.2d at 884 (alterations in original). Unlike in Sunnyside, the easement here contained no express language that requires Blue to remove his trees or prevent them from encroaching on the Donners' easement.

Because the Donners cite no controlling authority imposing a duty on Blue under the facts presented here, we conclude the trial court properly granted summary judgment dismissing the claims against Blue.

Uphill Respondents' Liability

The Donners argue that the uphill respondents are liable under the duties imposed by their respective easements.[5] Spring's easement differs from that of the other uphill respondents' and is discussed separately below.

1. Spring's Easement

The Donners contend that the hold harmless and indemnity provision (indemnity) in Spring's easement requires him to pay the damage caused by the clogged sewer pipe. The easement contains an indemnity clause requiring Spring to pay for any damages arising from his use. The Donners fail to identify any overt act or omission on

---

[5] While there appears to be some dispute as to whether certain easement agreements apply to certain parties, we need not resolve that issue.

the part of Spring that caused the damage. Spring's property benefits from an easement recorded in 1973. That easement provides:

> IT IS AGREED that the grantors of the easement described herein shall fully use and enjoy their premises, except as to the rights herein granted; and the grantee of such easement described herein does agree to hold and save his easement grantor harmless from and against any and all damage arising from his use of the right, easement and right of way herein granted and agrees to pay any damage or damages which may arise to the property, premises or rights of the easement grantor through easement grantee's use, occupation and possession of the rights herein granted.

(Emphasis added.) Under this indemnity clause, Spring's liability depends on whether the damage "arose" from his use of the easement. The Donners argue that Spring must pay for the damage "arising from" his use of the easement because his continued use of the easement after the sewer pipe became blocked contributed to the damage to their home. Br. of Appellant at 9.

But the Donners' broad and literal reading of this indemnity clause is not supported under well-settled indemnity law. Our Supreme Court interpreted a similar clause in Jones v. Strom Constr. Co., Inc., 84 Wn.2d 518, 527 P.2d 1115 (1974). Like other contractual provisions, indemnity provisions are governed by the general rules of contract construction and the parties' intent controls. Jones, 84 Wn.2d at 520.

> Moreover, and specifically with respect to indemnity provisions, it is to be noted that: (a) clauses which purport to exculpate an indemnitee from liability for losses flowing solely from his own acts or omissions are not favored and are to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor; (b) such clauses are to be viewed realistically, recognizing the intent of the parties to allocate as between them the cost or expense of the risk of losses or damages arising out of performance of the contract; and (c) causation of loss is the touchstone of liability under a construction contract indemnity clause, rather than negligence, although negligence may be incidental to the cause.

Jones, 84 Wn.2d at 520–21 (emphasis added). With these principles in mind, the court found an indemnity provision similar to the one at issue here[6] inapplicable because the plaintiff's injury, although occurring while he was performing the subcontract, did not "arise out of" that performance:

> Thus, it is clear that unless an overt act or omission on the part of Belden in its performance of the subcontract in some way caused or concurred in causing the loss involved, indemnification would not arise. Belden's mere presence on the jobsite inculpably performing its specified contractual obligations, standing alone, would not constitute a cause or participating cause.

Jones, 84 Wn.2d at 521-22 (emphasis added). Consistent with Jones's rationale, Spring's normal use of the sewer line standing alone does not constitute a cause or participating cause triggering a duty of indemnity. In Jones, the court rejected a "broad and sweeping" interpretation of the indemnity clause and instead acknowledged that such clauses must to be "strictly construed." Jones, 84 Wn.2d at 520–21. The Donners' concession that the sole cause of their damage was the tree roots on Blue's property defeats their claim of indemnification.[7] That condition was neither created by nor under Spring's control. We conclude that Spring is not liable under the easement's indemnity clause.

---

[6] The provision in Jones provided:
"'To indemnify and save harmless the CONTRACTOR from and against any and all suits, claims, actions, losses, costs, penalties, and damages, of whatsoever kind or nature, including attorney's fees, arising out of, in connection with, or incident to the SUBCONTRACTOR'S performance of this SUBCONTRACT.'" Jones, 84 Wn.2d at 521 (emphasis added).

[7] Nor do the Donners point to any competent evidence of their intent, i.e., that Spring agreed to indemnify the Donners for damages regardless of the cause.

All Uphill Respondents

Next, the Donners argue that the uphill respondents are liable because they breached their duty to maintain the easement. While they cast the obligation as a mere duty to maintain, in fact, the Donners seek to impose on the uphill respondents an affirmative duty to inspect and periodically clear the sewer line. As the trial court correctly observed:

> The crux of the case, I think, does come down to the question that I asked Mr. Daudt [plaintiffs' counsel], whether there was such a thing as a duty to maintain that was separate and distinct from a duty to inspect. The response [by plaintiffs' counsel] suggested that a duty to maintain involved a duty to periodically run cutters through the sewer line as it ran beneath someone else's property. To me, that's the same as a duty to inspect. I don't understand that proposition at all.
> In this case, I think there was a duty to maintain, a duty to repair, but there was no knowledge on the part of anyone as to any problem calling for action consistent with that duty.
> There is no indication from Mr. Daudt or anyone else that a standard of care would have involved some sort of an inspection, that the maintenance requirement placed on these parties either by common law or by the easement that that encompassed a duty to inspect for hidden unknown dangers.

Report of Proceeding (Dec. 13, 2013) (RP) at 43. The Donners contend that because the uphill respondents failed in this duty, the uphill respondents are liable for the damages the Donners incurred. The Donners do not contend that the blockage was visible to any of the parties. The Donners cite to no controlling authority imposing such an affirmative duty on the uphill respondents. Indeed, at oral argument on summary judgment, the Donners' attorney candidly acknowledged, "there is no authority addressing the inspection issue at all." RP at 33. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" State v. Logan, 102 Wn.

App. 907, 911, 10 P.3d 504 (2000) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

Both parties urge us to rely on different sections of the Restatement (Third) of Property to determine the extent of any duty owed by the uphill respondents. The Donners claim that § 4.13(1) imposes on the uphill respondents an affirmative duty to maintain the sewer line. See RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.13(1) (2000). The uphill respondents respond that under section 4.13(4), there is no affirmative duty to maintain, but common easement users must share the cost to maintain and repair the shared easement. See RESTATEMENT (THIRD) OF PROP. § 4.13(4). No Washington court has yet adopted the sections of the Restatement urged by the parties. In any event, no court has relied on the Restatement to impose the affirmative duty to maintain proposed by the Donners.

The Donners also rely on Buck Mountain Owners' Ass'n v. Prestwich, 174 Wn. App. 702, 718, 308 P.3d 644 (2013) ("[I]n the absence of an agreement, joint use of an easement creates an obligation to share costs."). Buck Mountain does not support the Donners' duty argument. There, we held that servient and dominant estate owners must share the cost to maintain and repair a shared easement when they regularly use the easement and the agreement creating the easement is silent as to apportioning those costs. Buck Mountain, 174 Wn. App. at 717–20. That case involved no question regarding an affirmative duty to inspect and repair by joint users of a common easement—the precise question presented here.

In their reply brief, the Donners cite several cases from other jurisdictions to support their argument that the uphill defendants owed some affirmative duty to

maintain and repair the sewer line. These cases are distinguishable. First, the Donners cite Powers v. Grenier Constr., Inc., 10 Conn. App. 556, 560, 524 A.2d 667 (1987) ("The duty of maintaining an easement so that it can perform its intended function rests on the owner of the easement absent any contrary agreement. The owner must maintain the easement so as to prevent injury to the servient estate."). (Citation omitted.) Powers differs from this case in two important ways. First, the dispute in Powers involved one dominant estate and one servient estate. Here, several dominant estates, including the Donners', hold easements on a common servient estate. Second, at issue in that case was the cost to repair the damaged drain system. Powers, 10 Conn. App. at 556. The uphill respondents here all agree that they are obligated to contribute to the cost of repairs. Further, the court noted that the action was "based on a breach of the duty to repair . . . ." Powers, 10 Conn. App. at 560. The court did not suggest that the dominant estate owner was required to take some affirmative action to inspect the drainage system. Next, the Donners cite Murtha v. O'Heron, 178 Ill. App. 347, 354 (Ill. App. Ct. 1913):

> The authorities show that in the case of a dominant and servient estate in the matter of a drain and of sewage, it is the duty of the owner of the dominant estate and easement at his own risk and without regard to his actual negligence or to his knowledge of any defect in the sewer or drain, to keep it in repair and . . . to keep the sewage from passing from his own premises to the plaintiff's premises otherwise than along the accustomed channel.

Murtha, 178 Ill. App. at 354. As in Powers, Murtha only involved a sole dominant estate owner and a sole servient estate owner. Murtha, 178 Ill. App. at 354. The Donners also cite Schilson v. Weinberg, 24 Ill. App. 3d 967, 322 N.E.2d 201 (1975), for the proposition that an easement owner has an affirmative duty to keep the easement in

-12-

repair. Like Murtha, Schilson does not involve multiple dominant estate owners utilizing a common easement. Further, the Schilson court found only a duty to repair and imposed damages for the cost to repair the easement. Schilson, 24 Ill. App. 3d at 971–72. It did not recognize an affirmative duty to maintain or inspect.

In Borgel v. Hoffman, 219 Pa. Super. Ct. 260, 280 A.2d 608 (1971), the court declined to impose an affirmative duty to maintain an easement when multiple beneficiaries share that easement. Borgel involved a driveway easement shared by several estates:

> The question presented to us can be stated as follows: Where the defendants own an easement over a driveway, a portion of which abuts or is located on their property, and a user contends negligence in their maintenance and repair of that portion of the driveway, are the other owners of properties abutting the driveway, who also enjoy an easement therein, responsible, either solely or jointly with the defendants, in the absence of any express covenant, for the repair and maintenance of that portion of the driveway so abutting or located on defendants' property?

Borgel, 280 A.2d at 609. The court noted the unique difficulty of the question, like the one at issue here, where "each owner of properties abutting the [easement] is an easement owner or a dominant tenant [and] an easement grantee or servient tenant . . . ." Borgel, 280 A.2d at 609. The court declined to impose on the easement owners an affirmative duty to maintain or repair other parts of the easement and, instead, found each owner "to be responsible for the maintenance and repair of only that portion of the driveway abutting or located on his own land." Borgel, 280 A.2d at 610.

On this point, Thompson on Real Property explains:

> [J]oint use by separate easements of the same facility or portion of the servient tenement gives rise to a duty of contribution to the reasonable costs of maintenance and repair. These duties of maintenance and repair or of contribution may be varied by agreement. . . . Where multiple parties, in this case

the lot owners in a subdivision, share in the use of roadway easements, they must also share in the cost of maintenance and repair. The rule governing proportional responsibility for maintenance arising from use of an easement by multiple parties in some jurisdictions has been made statutory.

7 THOMPSON ON REAL PROPERTY § 60.05(a) (footnotes omitted). As dominant estate owners sharing a common easement, the uphill respondents are required to share the cost to maintain and repair the sewer line. The trial court properly apportioned the repair costs among those parties. Because the Donners cite no controlling authority to support their claim that the uphill respondents owed them an affirmative duty to inspect and repair the common sewer line, we affirm summary judgment dismissing their claims against all uphill respondents.

Negligence, Nuisance, Trespass, and Injunctive Relief [8]

Finally, the Donners argue the uphill respondents are liable under claims for negligence, nuisance, and trespass. They also request injunctive relief. Because they have failed to show the uphill respondents owed them a duty, these claims fail.

The elements of negligence are duty, breach, injury, and proximate cause. Hostetler v. Ward, 41 Wn. App. 343, 349, 704 P.2d 1193 (1985). Nuisance and trespass are related claims focusing on the invasion of a property interest. Gaines v. Pierce County, 66 Wn. App. 715, 719, 834 P.2d 631 (1992). The Donners do not allege any intentional tort. To prove negligent nuisance or negligent trespass, a plaintiff must prove the elements of negligence. Gaines, 66 Wn. App. at 719–20. Accordingly, the Donners' claims for negligence, nuisance, and trespass all require a showing that the respondents owed the Donners an affirmative duty to inspect or maintain the sewer

---

[8] The Donners do not challenge dismissal of their claim for strict liability.

pipe. As explained above, because the Donners failed to demonstrate the respondents owed such a duty, these claims fail.

The Donners devote two sentences to their injunctive relief claim. Br. of Appellant at 15. "We will not consider an inadequately briefed argument." Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). We decline to consider their injunctive relief claim.

## CONCLUSION

For the reasons discussed above, we affirm summary judgment of dismissal in favor of all the respondents. Under the circumstances here, the respondents owed no affirmative duty to maintain by inspecting the shared sewer line. The Donners cite no controlling authority imposing such a duty. We affirm the court's order requiring the uphill respondents to share in the sewer line repair costs.

WE CONCUR: