**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
8/21/2023
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| VIRGINIA CHIU, an individual, and VINCENT LIEW, an individual, <br><br> Appellants, <br><br> v. <br><br> BRIAN HOSKINS and the marital community thereof, <br><br> Respondent. | No. 83734-6-I <br><br> ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |

The appellants, Virginia Chiu and Vincent Liew, and the respondent, Brian Hoskins, have filed motions for reconsideration of the opinion filed on July 10, 2023. The court has determined that the motions should be denied, but the opinion should be withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the motions for reconsideration are denied; and it is further

ORDERED that the opinion filed on July 10, 2023 is withdrawn; and it is further

ORDERED that a substitute published opinion shall be filed.

Feldman, J.

Díaz, J.

Dwyer, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VIRGINIA CHIU, an individual, and VINCENT LIEW, an individual, | No. 83734-6-I |
| Appellants, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| BRIAN HOSKINS and the marital community thereof, | |
| Respondent. | |

FELDMAN, J. — Virginia Chiu and Vincent Liew (Tenants) appeal the trial court's order on summary judgment, findings of facts and conclusions of law, and judgment in this landlord-tenant dispute. Tenants claim that their landlord, Brian Hoskins, failed to comply with various provisions in the Residential Landlord-Tenant Act of 1973 (RLTA), ch. 59.18 RCW, and chapter 7.24 (Rental Agreement Regulation) of the Seattle Municipal Code (SMC). The trial court concluded that Hoskins failed to comply with several such provisions but declined to award damages because it concluded that Tenants had not suffered actual damages. Tenants contend that the trial court erred in failing to award statutory damages and attorney fees, which they claim are *required* by the RLTA and the SMC upon finding a violation. We agree with Tenants and reverse in part on this point. We

also hold that the trial court applied the wrong legal standard in awarding damages to Hoskins for costs he incurred to restore the property to "move-in condition" after Tenants vacated the property, and we reverse on that point as well. In all other respects, we affirm.

I

Tenants first learned of the rental property at issue in this appeal (the Property) in June 2018. After seeing the Property, they filled out an application, which Hoskins approved. Hoskins then sent them a lease with a move-in checklist for them to fill out. The purpose of the required move-in checklist is to identify existing issues that are purportedly subject to repair by the landlord. Tenants signed both the lease and the checklist as required. Hoskins also signed the checklist but did not send it back to Tenants. Instead, Hoskins responded to a list of move-in issues that Tenants had provided by e-mail. Hoskins replied promptly to that list and repaired those issues that could be fixed.

The monthly rent was $2,395, and Hoskins also required a security deposit of $2,800, which included a $300 nonrefundable cleaning fee. Although Tenants paid the security deposit without complaint, they discovered a year later that a security deposit cannot lawfully exceed the monthly rent, nor can a nonrefundable move-in fee exceed 10 percent of the monthly rent, under SMC 7.24.035. Hoskins did not realize that this limit had changed in 2017 and had thus charged Tenants an excessive amount. When Tenants brought this issue to Hoskins' attention, he promptly refunded the overage.

When they took occupancy of the Property, Tenants' understanding was that they were to take care of the yard. Hoskins asked if they wanted to hire a

gardener, and they indicated they did not because they liked gardening. They subsequently struggled to maintain the yard, so Hoskins asked again if they wanted to hire a gardener. This time, Tenants agreed. Hoskins then found a gardener, and Tenants agreed to pay the gardener $50 per month. Thereafter, the gardener maintained the yard periodically but did not notify Hoskins or Tenants when he would be performing these services.

The lease expired on June 27, 2019, and Tenants thereafter agreed to go month to month (with no rent increase) until they moved out at the end of August. When Tenants moved out, they did not leave the Property in the same condition that it was in at the inception of the lease. Hoskins incurred various costs for cleaning and repairs to return the Property to its prior condition, and he subtracted those charges from Tenants' remaining security deposit.

After Tenants informed Hoskins that they would be moving out at the end of August, Hoskins identified a prospective tenant, who signed a lease with Hoskins with a move-in date of August 24, 2019. The prospective tenant paid Hoskins $6,587 but then rescinded the lease for a number of reasons, including the condition of the apartment and yard. The prospective tenant and Hoskins reached an agreement whereby Hoskins retained $1,297 and refunded the rest.

Dissatisfied that they had not received their full security deposit back, Tenants sued Hoskins, alleging that he had violated both the SMC and RLTA. Hoskins denied Tenants' allegations and asserted a counterclaim for breach of contract and waste. A bench trial was held in December 2021, and the trial court largely ruled in Hoskins' favor. The court rejected Tenants' arguments regarding various "technical violations" of the SMC and RLTA because Tenants had not

-3-

No. 83734-6-I/4

proved actual damages and/or Hoskins had not acted unlawfully. Regarding Hoskins' counterclaim, the court found Tenants liable for $2,346 for repairs, cleaning, and yard maintenance and $800 ($100 per day) for eight days during which Hoskins could not rent the unit as a result of the way Tenants had left it.

The trial court then turned to the issue of prevailing party attorney fees. The court ruled that Hoskins was the prevailing party for purposes of awarding attorney fees under the parties' lease, which states in relevant part, "[I]n the event of disagreement or litigation regarding the performance of the terms and provisions of this Agreement by either party hereto, the prevailing party shall be entitled to the payment of their costs and expenses, including reasonable attorney's fees . . . . " Based on this provision, the trial court awarded Hoskins $19,325 for fees incurred in defense against Tenants' claims.

The trial court entered judgment in Hoskins' favor. Tenants appealed, and Hoskins cross-appealed. Hoskins has since withdrawn his cross-appeal.

II

When reviewing a trial court's findings of fact and conclusions of law following a bench trial, we determine "whether the findings of fact are supported by substantial evidence and whether those findings support the conclusions of law." *224 Westlake, LLC v. Engstrom Props., LLC*, 169 Wn. App. 700, 705, 281 P.3d 693 (2012). The substantial evidence standard is satisfied if there is sufficient evidence "'to persuade a rational, fair-minded person of the truth of the finding.'" *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 353, 172 P.3d 688 (2007) (quoting *In re Est. of Jones,* 152 Wn.2d 1, 8, 93 P.3d 147 (2004)). If that standard is satisfied, we will not substitute our judgment for that of the trial court even if we

No. 83734-6-I/5

might have resolved disputed facts differently. *Green v. Normandy Park Riviera Section Cmty. Club, Inc.*, 137 Wn. App. 665, 689, 151 P.3d 1038 (2007), (citing *Sunnyside Valley Irrig. Dist. v. Dickie,* 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). The standard of review applicable to legal issues, including the proper interpretation of the RLTA and SMC, is de novo. *State v. Grocery Mfrs. Ass'n*, 195 Wn.2d 442, 456, 461 P.3d 334 (2020).[1]

A.      *Deposit, nonrefundable move-in fee, and checklist*

The trial court concluded that Hoskins charged a security deposit in excess of the monthly rent and a nonrefundable fee in excess of 10 percent of the monthly rent in violation of SMC 7.24.035(A)[2] and (B)(4),[3] respectively. The court also concluded "that the checklist signed by Hoskins was not provided to the plaintiffs" in violation of SMC 7.24.030(C)(1).[4] Despite these findings, the trial court did not award damages based on the security deposit violation because it found that "plaintiffs did not suffer any damages as a result of the violation . . . ." Nor did it award damages for the checklist violation, similarly ruling that "[t]he court does not

---

[1] While the Supreme Court has held that the RLTA is a remedial statute, *see Silver v. Rudeen Mgmt. Co.*, 197 Wn.2d 535, 548, 484 P.3d 1251 (2021), the parties dispute whether the SMC is remedial in nature. The proper resolution of this issue determines whether any ambiguity in the SMC must be resolved in Tenants' or Hoskins' favor. Because we find no ambiguity in the RLTA or the SMC, we need not (and do not) rely on these rules of statutory interpretation.

[2] SMC 7.24.035(A) states in relevant part, "After January 15, 2017, the total amount of a security deposit and nonrefundable move-in fees may not exceed the amount of the first full month's rent for the tenant's dwelling unit."

[3] SMC 7.24.035(B)(4) states in relevant part, "The total amount of non-refundable move-in fees may not exceed ten percent of the first full month's rent . . . ."

[4] SMC 7.24.030(C)(1) provides, "The landlord shall prepare and provide to the tenant at the commencement of tenancy a written checklist or statement specifically describing the condition and cleanliness of or existing damages to the dwelling unit at the time of occupancy including damages to the premises and furnishings, which include but are not limited to walls, floors, countertops, carpets, drapes, furniture, and appliances. The checklist or statement shall be signed and dated by the landlord and the tenant, and the tenant shall be provided with a copy of the signed checklist or statement."

No. 83734-6-I/6

find the plaintiffs suffered any damages as a result of not receiving a copy of the lease that contained the landlords' [sic] signature."

Substantial evidence supports the trial court's findings and conclusions regarding SMC 7.24.035(A), 7.24.035(B)(4), and 7.24.030(C)(1). Preliminarily, Hoskins charged Tenants a security deposit of $2,800 despite a monthly rent of $2,395 in violation of SMC 7.24.035(A). While Hoskins promptly returned the overage when the tenants informed him of the violation, SMC 7.24.035(A) is stated in the disjunctive—"charged or withheld"—and he plainly charged an unlawful amount. Additionally, SMC 7.24.035(E) states that "[n]o deposit may be collected by a landlord unless the rental agreement is in writing and a written checklist or statement specifically describing the condition and cleanliness of or existing damages to the premises and furnishings . . . is provided by the landlord to the tenant at the commencement of the tenancy." Thus, if a landlord fails to provide a signed checklist, as occurred here, the landlord cannot lawfully charge, collect, *or* withhold a security deposit. Because Hoskins violated SMC 7.24.035(A), SMC 7.24.035(B)(4), *and* SMC 7.24.030(C)(1), it was unlawful for him to charge, collect, or withhold *any* security deposit.

Despite this evidence, Hoskins argues that he is not liable to Tenants under SMC 7.24.060(A)(1) because that provision imposes liability only if a landlord "*attempts to enforce* provisions in a rental agreement that are contrary to the requirements of Sections 7.24.030, 7.24.035, 7.24.036, or 7.24.038." SMC 7.24.060(A)(1) (emphasis added). The SMC does not define the critical phrase "attempts to enforce."  Where a statute does not define a term, the court may look to the dictionary for a definition of the term's ordinary meaning. *State v. Christian*,

-6-

200 Wn. App. 861, 865, 403 P.3d 925 (2017). The term "attempt" is defined as "to make an effort to do, accomplish, solve, or effect." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 140 (1993). And "enforce" is defined to include "**1 :** to give force . . . **5 :** . . . COMPEL . . . **7 :** to put in force **:** cause to take effect." WEBSTER'S at 751. Thus, the ordinary meaning of "attempts to enforce" is to make an effort to give force, compel, or put in force: cause to take effect. Applying that construction here, Hoskins attempted to enforce provisions that were contrary to the SMC when he charged and collected a security deposit in excess of the monthly rent and a nonrefundable fee in excess of 10 percent of the monthly rent in violation of SMC 7.24.035(A) and (B)(4) and did so without providing a signed checklist as required by SMC 7.24.030(C)(1), which is a violation of SMC 7.24.035(E).

Having concluded that the trial court correctly found Hoskins violated the SMC in multiple respects, we turn to the issue of remedy. By ruling that Tenants could not recover damages unless they could show actual damages, the trial court misinterpreted SMC 7.24.060(A)(1). That section states:

> If a landlord attempts to enforce provisions in a rental agreement that are contrary to the requirements of Sections 7.24.030, 7.24.035, 7.24.036, or 7.24.038, the landlord *shall be liable* to the tenant for: 1) any actual damages incurred by the tenant as a result of the landlord's attempted enforcement; 2) double the amount of any penalties imposed by the City; 3) double the amount of any security deposit unlawfully charged or withheld by the landlord; and 4) reasonable attorney fees and costs.

SMC 7.24.060(A)(1) (emphasis added). As can be seen, the plain language of the statute is mandatory—"the landlord *shall be liable*." Thus, if a landlord attempts to enforce provisions in a rental agreement that are contrary to the requirements of the enumerated provisions, the trial court *must* award (1) actual damages, (2)

-7-

double any penalties imposed, (3) double the amount of any security deposit unlawfully charged or withheld, and (4) reasonable attorney fees and costs. The trial court here correctly recognized and applied subsection (1) but erroneously overlooked subsection (3) as well as subsection (4).

While Tenants can recover statutory damages under the SMC, what they cannot do is recover those statutory damages multiple times. That issue is squarely addressed in SMC 7.24.060(A)(1), which states that a landlord "shall be liable" if the "landlord attempts to enforce provisio*ns* in a rental agreement that are contrary to the requirements of Sections 7.24.030, 7.24.035, 7.24.036, or 7.24.038." (Emphasis added.) As the plural "provisio*ns*" shows, a landlord is liable for actual and statutory damages under SMC 7.24.060(A)(1) if the landlord enforces one or more unlawful provisions (plural) in a rental agreement. Here, the unlawful lease provisions are and relate to (a) the excessive security deposit, (b) the excessive nonrefundable cleaning fee, and (c) the unsigned checklist. Under SMC 7.24.060(A)(1), Tenants can properly recover actual and statutory damages because their lease includes unlawful provisions. What Tenants cannot do is recover the *same* actual and statutory damages several times simply because the lease includes several unlawful provisions under the SMC.

Nor can Tenants simultaneously recover under both the SMC and the RLTA for each violation at issue here. By way of example, the deposit and checklist requirements in SMC 7.24.035(E) precisely track the requirements in RCW 59.18.260.[5] Tenants claim, therefore, that they can recover statutory damages

---

[5] SMC 7.24.035(E) states in pertinent part, "No deposit may be collected by a landlord unless the rental agreement is in writing and a written checklist or statement specifically describing the

under *both* provisions. We disagree, as "it is a basic principle of damages . . . that there shall be no double recovery for the same injury." *Pub. Emps. Mut. Ins. Co. v. Kelly*, 60 Wn. App. 610, 618, 805 P.2d 822 (1991). Additionally, Tenants have not cited a case where a tenant has recovered under both the RLTA and the SMC for the same underlying violation. We therefore assume no such case exists. *Donner v. Blue*, 187 Wn. App. 51, 61, 347 P.3d 881 (2015) ("'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" (internal quotation marks omitted) (quoting *State v. Logan*, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000)).[6]

Finally, we turn to the issue of attorney fees. The SMC requires that the trial court award reasonable attorney fees where a violation is found. It states, "[T]he landlord *shall be liable* to the tenant for . . . reasonable attorney fees and costs." SMC 7.24.060(A)(1) (emphasis added). The RLTA, in turn, includes discretionary

---

condition and cleanliness of or existing damages to the premises and furnishings, including, but not limited to, walls, floors, countertops, carpets, drapes, furniture, and appliances, is provided by the landlord to the tenant at the commencement of the tenancy. The checklist or statement shall be signed and dated by the landlord and the tenant, and the tenant shall be provided with a copy of the signed checklist or statement." RCW 59.18.260 likewise states, "No deposit may be collected by a landlord unless the rental agreement is in writing and a written checklist or statement specifically describing the condition and cleanliness of or existing damages to the premises and furnishings, including, but not limited to, walls, floors, countertops, carpets, drapes, furniture, and appliances, is provided by the landlord to the tenant at the commencement of the tenancy. The checklist or statement shall be signed and dated by the landlord and the tenant, and the tenant shall be provided with a copy of the signed checklist or statement."

[6] Tenants wrongly claim that the court allowed such a double recovery in *Lang Pham v. Corbett*, 187 Wn. App. 816, 351 P.3d 214 (2015). Contrary to Tenants' argument, the court in *Pham* did not allow the tenants to recover under both the RLTA and the SMC for the same underlying violation. Instead, the issue was whether the tenants could recover both relocation assistance under SMC 22.206.260(F) and *other relief* under the RLTA. 187 Wn. App. at 835. Also critical here, *Pham* interpreted and applied chapter 22.206 SMC and not the provisions in chapter 7.24 SMC at issue here. 187 Wn. App. at 835. It is of no moment here that Title 22 SMC does not affect or limit a tenant's rights under the RLTA—as the court held in *Pham*, citing SMC 22.206.305—because Tenants here are not pursuing a claim under that title.

No. 83734-6-I/10

language: "the prevailing party *may recover* court costs and reasonable attorneys' fees." RCW 59.18.260 (emphasis added). Thus, for the same reasons set forth above (the mandatory language in SMC 7.24.060(A)(1)), Tenants are entitled to recover reasonable attorney fees as well as statutory damages under SMC 7.24.060(A)(1). We remand the matter to the trial court to award these amounts.[7]

B.     *Notice of yardwork*

Tenants next argue that the trial court erred when it rejected their claim that Hoskins violated SMC 22.206.180(F) when a gardener entered the backyard without providing two days' notice. SMC 22.206.180(F)(1)(a) states in pertinent part that it is unlawful for an owner to "[e]nter a tenant's housing unit or premises" except after giving the tenant "at least two days' notice of intent to enter for the purpose of inspecting the premises, making necessary or agreed repairs, alterations or improvements, or supplying necessary or agreed services." Addressing this issue, the trial court found "that the defendant Hoskins did not violate the ordinance because the gardener did not go inside the unit; all the work was done outside."

We agree with the trial court's analysis. The rental agreement here defines the leased premises as "the apartment situated on the upper/main level of the house at 5329 9th Ave. NE in the City of Seattle, County of King, State of

---

[7] Tenants also claim that Hoskins violated SMC 7.24.060(A)(2), which states, "A landlord who includes provisions prohibited by subsection 7.24.030.B, Section 7.24.035, Section 7.24.036, or Section 7.24.038 in a new rental agreement, or in a renewal of an existing agreement, shall be liable to the tenant for up to $3,000 plus reasonable attorney fees and costs." Unlike SMC 7.24.060(A)(1), which requires an award of statutory damages, SMC 7.24.060(A)(2) requires proof of actual damages and limits recovery of those damages to "up to $3,000." The trial court found that Tenants proved "no actual damages," and its finding is supported by substantial evidence. Thus, the trial court correctly denied recovery of both damages and attorney fees under SMC 7.24.060(A)(2). ]

-10-

Washington." Because the yard is not part of the housing unit or leased premises, the gardener did not enter Tenants' housing unit or premises and was not required to give notice under SMC 22.206.180(F)(1)(a). The trial court correctly rejected this claim.

C.      *Delivery of deposit statement*

Tenants assert that Hoskins failed to comply with the RLTA requirement to timely give them a security deposit statement when he e-mailed the statement to them rather than delivering it personally or placing a copy in the United States mail. The RTLA addresses this requirement in RCW 59.18.280(1), which states in relevant part:

> Within twenty-one days after the termination of the rental agreement and vacation of the premises . . . the landlord *shall give* a full and specific statement of the basis for retaining any of the deposit together with the payment of any refund due the tenant under the terms and conditions of the rental agreement . . . .
>
>        . . . .
>
>        (b) The landlord complies with this section if the required statement or payment, or both, are delivered to the tenant personally or deposited in the United States mail properly addressed to the tenant's last known address with first-class postage prepaid within the twenty-one days.

(Emphasis added.) The trial court found that Mr. Hoskins complied with RCW 59.18.280 and dismissed the claim on summary judgment. Based on the plain language of the statute and undisputed facts, we affirm.

On September 6, 2019, six days after the lease expired,[8] Hoskins sent an e-mail to Tenants with an initial explanation of repairs and dollar amounts.

---

[8] As noted previously, Tenants asked Hoskins, and Hoskins agreed, to extend the lease until the end of August. While Hoskins initially identified a tenant who was willing to move into the Property on August 24, 2019, the prospective tenant rescinded their lease with Hoskins due to (among other

-11-

No. 83734-6-I/12

Following this, on September 16, 2019, Hoskins sent Tenants an itemized accounting of the security deposit indicating a total refund of $346.13. He then issued payment for that amount on September 20, 2019. Payment occurred within the 21-day period specified in RCW 59.18.280(1). While the deposit statement was not delivered personally to Tenants or sent by United States mail, RCW 59.18.280(1) does not mandate either method of delivery. To the contrary, subsection (b) provides two ways to "give" the required security deposit statement that are sufficient to establish compliance with RCW 59.18.280(1) but does not exclude or prohibit other, equally effective, ways to give the statement, including e-mail.

We have interpreted other statutes in a similar fashion. For example, the first sentence of RCW 4.28.210 states that "[a] defendant appears in an action when he or she answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his or her appearance." In *City of Des Moines v. $81,231 in United States Currency*, 87 Wn. App. 689, 696, 943 P.2d 669 (1997), we held that "[t]he methods set forth in RCW 4.28.210 for 'appearing' in an action are not exclusive" and therefore other acts may constitute an "appearance." The same reasoning applies to RCW 59.18.280(1). Because undisputed facts show that Hoskins satisfied the statutory requirement to timely "give" Tenants a security deposit statement, and because Hoskins issued payment to Tenants within the

---

things) the condition of the apartment and yard. The 21-day period in RCW 59.18.280(1) thus commences on August 31, 2019.

-12-

prescribed 21-day period,[9] the trial court correctly dismissed this claim on summary judgment.

D.   *Hoskins' counterclaim for breach of the lease agreement and waste*

Turning to Hoskins' counterclaim for breach of the lease agreement and waste, the trial court found in favor of Hoskins and awarded three distinct categories of damages: (1) $1,300 paid by Hoskins to the gardener to clean up the yard, (2) $800 ($100 per day) for eight days during which Hoskins could not rent the unit as a result of the way Tenants had left it, and (3) $746.65 for repair costs relating to patching, paint, a refrigerator shelf, and various other repairs. Tenants contend that each of these awards is erroneous. We agree in part and disagree in part as follows.

Starting with the gardener fees, Tenants argue that the trial court erred when it allowed Hoskins to argue at trial that he should recover $1,300 for landscaping when the court had already determined in response to their summary judgment motion that "Hoskins had already agreed to only charge $1,000." A trial court, however, is not bound by its summary judgment rulings and can revise those rulings "any time before entry of final judgment." *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 300, 840 P.2d 860 (1992). Additionally, substantial evidence, including testimony and photographs of the yard, supports the trial court's award of $1,300 for this item. Tenants' contrary arguments are without merit.

---

[9] While Hoskins made additional payments to Tenants after September 20, they relate to his continuing efforts to negotiate with Tenants regarding the amount of their deposit refund. Given the parties' ongoing negotiations and corresponding resolution, these additional payments do not violate the 21-day deadline specified in RCW 59.18.280(1). *See Goodeill v. Madison Real Estate*, 191 Wn. App. 88, 91, 362 P.3d 302 (2015) (requiring "conscientious attempt to comply with" statutory deadline).

-13-

No. 83734-6-I/14

Turning to the remaining items, the trial court awarded these amounts because it found that "[w]hen the plaintiffs moved out, they did not leave the premises in *move-in condition* as required by the lease" and that "Hoskins met his burden by a preponderance of evidence that the plaintiffs did not leave the unit in *move in condition*." (Emphasis added.) Based on these findings, the trial court awarded Hoskins $746.65 for repair costs relating to patching, paint, a refrigerator shelf, and various other "minor repairs." The court similarly found that "the unit would not have been in move in condition until September 8th, 2019, when the repairs, the yardwork, and the cleaning had been completed" and therefore awarded $800 ($100 per day) for the eight days during which Hoskins could not rent the unit as a result of the way Tenants had left it.[10] Tenants argue that in awarding these damages the trial court applied the wrong legal standard. We agree.

This issue is squarely governed by several complementary provisions of the RLTA. First, RCW 59.18.130(10) states that "[e]ach tenant shall . . . [u]pon termination and vacation, restore the premises to their initial condition except for reasonable wear and tear or conditions caused by failure of the landlord to comply with his or her obligations under this chapter." Second, RCW 59.18.260 states, "No such deposit shall be withheld on account of normal wear and tear resulting from ordinary use of the premises." And lastly, RCW 59.18.280(1)(a) likewise states,

---

[10] The award of $800 is premised on section 13 of the lease, entitled "UNCLEAN/DAMAGED CONDITIONS," which states, "Should Lessee leave the apartment in an unclean or damaged condition and Owner/Manager is unable to lease the apartment because of the condition, then Lessee shall be liable for $100 for each day of lost rent." While the standard for awarding this amount improperly varies from the RLTA (as discussed in the text above), there is no argument that $100 constitutes an unlawful penalty, presumably because it approximates the monthly rent.

-14-

"No portion of any deposit shall be withheld on account of wear resulting from ordinary use of the premises."

Applying the plain language of the statute, the trial court was required by the RLTA to determine whether Tenants failed to leave the leased premises (the apartment, as defined in the lease and discussed above) in "their initial condition except for reasonable wear and tear or conditions caused by failure of the landlord to comply with his or her obligations under this chapter" and award recoverable damages if and to the extent that Tenants failed to do so. Instead, the trial court applied a "move-in condition" test, which erroneously varies from the RLTA. We therefore vacate the judgment on these awards and remand the issue so that the trial court can properly award damages for repair costs and $100 per day for each day of lost rent, if any, based on the controlling legal standard set forth above and in RCW 59.18.130(10).

Finally, Tenants claim that the award of $800 for lost rent also is untenable because Hoskins collected rent from a prospective tenant for a period that included September 1-8 and then refunded *some* of that rent and retained $1,297. Addressing this issue, the trial court explained that Hoskins was unable to rent the unit for 22 days, which would have supported a damages award of $2,200, but it awarded only $800. The difference between these two figures is $1,400, which is more than the amount ($1,297) that Hoskins retained from the rent paid by the prospective tenant. While the trial court applied an incorrect legal standard for determining liability—as the above discussion shows—it appropriately analyzed Hoskins' alleged damages and may elect to do so again at the conclusion of the litigation.

No. 83734-6-I/16

E.      *Attorney fees on appeal*

Both parties request attorney fees on appeal pursuant to RAP 18.1. Tenants argue that they are entitled to attorney fees under SMC 7.24.060, while Hoskins seeks attorney fees under the parties' lease. This court has repeatedly held that "[w]here both parties prevail on major issues, neither is entitled to attorney fees." *Sardam v. Morford*, 51 Wn. App. 908, 911, 756 P.2d 174 (1988). Here, as in *Sardam*, both parties have prevailed on major issues, so neither is entitled to recover prevailing party attorney fees on appeal.

III

We vacate the trial court's judgment and remand the matter for further proceedings consistent with this opinion, including an award of (1) statutory damages and attorney fees under SMC 7.24.60(A)(1); and (2) repair costs and $100 per day for each day of lost rent, if any, based on the controlling legal standard in RCW 59.18.130(10).

We also vacate the trial court's award of attorney fees under the parties' lease. Whether to award on remand attorney fees under the lease necessarily turns on issues that this Court did not address, such as whether Hoskins or Tenants ultimately prevail in the litigation.

In all other respects, we affirm.

Feldman, J.

WE CONCUR:

Díaz, J.

Dwyer, J.

-16-